[Civ. No. 5808. Second Appellate District, Division One.—May 29, 1928.]

GUY O. SWARTZ, Respondent, v. PHILLIP FEDDER-SHON, Appellant.

[Civ. No. 5809. Second Appellate District, Division One.—May 29, 1928.]

JENNIE J. SWARTZ et al., Respondents, v. PHILLIP FEDDERSHON, Appellant.

Hardy, Elliott & Eberle for Appellant.

Ida May Adams for Respondents.

SHAW, J., *pro tem.*—These cases were tried together in the superior court, and in each case judgment was rendered against the defendant, from which he appeals. Both appeals are submitted to us on the same record and the same briefs. The cases arose out of a collision between two automobiles, one driven by the defendant, and the other driven by the plaintiff Guy O. Swartz, in which his wife, the plaintiff Jennie J. Swartz, was riding. In one of the cases Guy O. Swartz sued alone as plaintiff for damages caused by personal injuries suffered by him in this collision, for damages caused to him by injuries to his wife, and for damages to his automobile. In the other case both plaintiffs sued for personal injuries received by the plaintiff Jennie J. Swartz.

The points made in support of both appeals are the same. The defendant contends that the evidence established contributory negligence of both plaintiffs as a matter of law, and, hence, that his motion for a nonsuit should have been granted or the verdict. should have been in his favor; that the evidence does not support the verdict; and that the court erred in refusing to give certain instructions requested by him and in overruling his objection to certain evidence offered by the plaintiff. All of these points, except those relating to instructions and rulings on evidence, may be considered together.

The evidence herein was conflicting in many respects. From the verdict we must conclude that the jury took the view of it most favorable to the plaintiffs. Taking such a view and resolving all doubts and inconsistencies for the plaintiffs, they were warranted in finding the following facts. In discussing these facts we shall, except as otherwise indicated, refer to the plaintiff Guy O. Swartz, who was driving his automobile, simply as "plaintiff."

The collision occurred in the forenoon at the intersection of Sunset Boulevard, on which the plaintiff was driving in a northerly direction, and Temple Avenue, on which defendant was driving in an easterly direction. Both of these highways were in a rural community; Sunset Boulevard was paved and Temple Avenue was unpaved, but was graded and graveled. Each of them was sixty feet wide between prop-

erty lines. In the angle at the southwest corner of the two highways, across which the plaintiff and defendant must have looked to see each other as they approached the intersection, and within one hundred feet of each highway, were some trees which partly obstructed the view of one highway from the other, but did not entirely obscure it. West of the trees was a house, the nearest side of which was one hundred five feet west of the west line of Sunset Boulevard. As the plaintiff, driving north along Sunset Boulevard, neared Temple Avenue his view to the east was cut off by structures situated at the southeast corner. Plaintiff was driving at a speed of about tweny-five miles an hour, but as he reached a point one hundred thirty-five to one hundred forty feet from the intersection he slowed down to twenty miles an hour. When he was one hundred feet from the intersection he slowed down to fifteen miles an hour and as he entered and traversed the intersection he was going between ten and twelve miles an hour. Plaintiff was at all times traveling on the right side of Sunset Boulevard. When the defendant reached a point a little over two hundred feet west of the intersection he was going forty or forty-five miles an hour and traveling on the left side of Temple Avenue, and he continued at that rate of speed and on the left side of the highway until he entered the intersection. Upon entering the intersection he did not look in either direction and he did not see the plaintiff's automobile until just before the collision. The plaintiff entered the intersection first and his front wheels had just crossed the center line of Temple Avenue when defendant entered the intersection. Plaintiff's automobile was struck on the left front corner by the right front corner of defendant's machine, turned completely over, and was practically demolished. Defendant's machine remained upright. When the plaintiff reached a point variously stated as fifty-nine or eighty feet from the center line of Temple Avenue, he heard a loud noise as of an approaching machine, looked to the west, saw the defendant approaching and observed that he was then a little over two hundred feet west of the intersection, going forty to forty-five miles an hour and traveling on the left side of the road. Plaintiff did not at that time anticipate a collision and he then looked to the right or east on Temple Avenue to see if anyone was coming that way, and continued to do so until he

could see along Temple Avenue. He testified that he did not again look to the left because he believed defendant would stop before he reached the intersection. Plaintiff did not look a second time toward defendant until plaintiff's machine was crossing the center line of Temple Avenue and defendant's machine was entering the intersection. Seeing the defendant, the plaintiff then put on his brakes and locked his wheels in an attempt to stop, causing them to slide two or three feet before the collision occurred.

From the facts above stated on which the jury may have based their verdict, it appears that the defendant was guilty of two violations of the Motor Vehicle Act [Stats. 1923, p. 517], each of which constituted negligence and proximately contributed to the accident: (1) He failed to yield to plaintiff the right of way to which the latter was entitled under section 131 of the Motor Vehicle Act as it stood at the time of the accident by virtue of having first entered the intersection at a lawful rate of speed; (2) He was traveling on the left side of the highway although the other side was passable.

The defendant contends, however, that conceding that he was negligent, the evidence shows without conflict that the plaintiffs were both guilty of contributory negligence as a matter of law, in that they proceeded blindly and heedlessly into a known danger. We do not think the facts fully warrant this argument. When the plaintiff first saw the defendant's automobile, plaintiff was somewhere between twenty-nine and fifty feet from the nearest edge of the intersection, while the defendant was over two hundred feet therefrom, and their respective rates of speed were such that if they were maintained the plaintiff would enter the intersection first and for that reason have the right of way. It would therefore become the defendant's legal duty to yield the right of way. He was also legally required to veer to the right side of the highway. If he had done either of these things, the collision would probably not have occurred, and both of them could easily have been done in the two hundred feet available to the defendant when the plaintiff first saw him. The plaintiff upon his first view of the situation may have come to such a conclusion and failed to look further to the left because of his belief that no danger was to be expected from that direction. Under these circum-

stances it may not be said as a matter of law that the plaintiff was bound to expect that the defendant would fail in the due performance of either of the duties above mentioned. ''The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.'' (*Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155].) To the plaintiff, therefore, the defendant's visible approach more than two hundred feet away did not necessarily constitute a known danger, nor do we think the plaintiff was bound to watch the defendant continuously to discover the first sign of any intention on his part to violate the law. If at any time it had become apparent to the plaintiff from his observation that the defendant could not or would not conform to the law, then the plaintiff would perhaps have been required to regard defendant's approach as a known danger and take steps to guard against it.

Under the facts above stated the defendant's argument really amounts to a contention, not that the plaintiff proceeded into a known danger, but that he negligently failed to inform himself of the danger. His conduct in this respect must be considered in connection with the further fact that during the interval between his two views of the defendant there were other duties resting upon him which were at least as imperative as that of observing the defendant's further actions. The plaintiff was required to slow down to fifteen miles an hour before reaching the crossing, to look out for possible vehicles approaching from the north, and especially to look to the east, from which direction danger was to be expected because a vehicle coming from that direction at a lawful speed, and entering the intersection before plaintiff, would have the right of way. The evidence shows that as the plaintiff approached the intersection a fleeting view of the highway to the east could be had between two of the obstructions, through which he looked for that purpose, and that the next view to the east was possible only on coming to Temple Avenue. It may be that if the jury had found the plaintiff negligent in failing to look again to the west before entering the intersection, their conclusion would

find support in the evidence, but we do not think that such a conclusion is necessarily required by the evidence or that reasonable minds could not differ on the subject, and, hence, we hold that their finding in favor of plaintiff on this issue cannot be set aside on appeal. ■ The situation as to the plaintiff Jennie J. Swartz is not materially different. She was not driving the machine in which she was riding and the only negligence charged against her is her failure to warn her husband of the defendant's approach. She made substantially the same observations as did her husband and there is no reason to hold her to the exercise of any greater diligence as a result thereof than is imposed on him. As to her also the question whether she used ordinary care under the circumstances was one of fact for the jury. Our conclusion as to both plaintiffs is fully supported by the following decisions: *Oberholzer* v. *Hubbell,* 36 Cal. App. 16 [171 Pac. 436]; *Carbaugh* v. *White Bus Line,* 51 Cal. App. 1 [195 Pac. 1066]; *Commonwealth Ins. Co.* v. *Cement Co.,* 69 Cal. App. 165 [230 Pac. 995]; *Bauman* v. *Edgar,* 72 Cal. App. 448 [236 Pac. 942]; *Simonsen* v. *Christopher Co.,* 186 Cal. 786 [200 Pac. 615].

■ The defendant further complains of the action of the trial court in refusing certain instructions requested by him, which he says are not fully covered by the instructions given. One of these instructions appears to be a correct statement of the law. The record in this case is in typewritten form, having been prepared under the so-called alternative method, and the defendant has not printed in his brief any of the instructions which were given. We are, therefore, unable to determine therefrom whether or not the one correct instruction which was requested was included in those which were given. "It is not a sufficient predicate for a claim of error that instructions which properly state the law have been rejected. The assignment must go further and point out wherein the subject of the instruction was not in fact covered by those actually given." (*Estate of McDonald,* 191 Cal. 161–171 [215 Pac. 545].)

■ Defendant complains of the following ruling made while the plaintiff Jennie J. Swartz was on the stand: "Q. By Miss Adams: Did you hear anything said by—did you hear anything said by Mr. Feddersohn? Mr. Aberle: Just a minute, if the Court please I would like to have the foundation laid,

if Mr. Feddersohn was there. The Court: Overruled. Answer the question. A. Yes, I did. Q. By Miss Adams: What did you hear him say? A. I heard him say, 'Oh, my God, my God, are they all killed and it was all my fault,' just yelling at the top of his voice.'' The only ground of objection stated was the want of a foundation for the question. Under the circumstances here appearing no further foundation was necessary. Feddersohn was the defendant and no foundation as to time, place, and persons present was necessary before evidence of his admissions could be introduced. (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531 [Ann. Cas. 1913D, 908, 123 Pac. 359].) After this testimony was given the witness gave some further testimony on cross-examination which possibly indicated that the witness did not know that the statement above quoted was made by Feddersohn, but defendant then made no motion to strike out the testimony complained of; and since this objection was not presented by him to the lower court, he cannot now avail himself of it.

The judgments appealed from are affirmed.

Conrey, P. J., and York, J., concurred.