[Civ. No. 134. Fourth Appellate District.—June 12, 1930.]

FRANKLIN C. GRIMES, Respondent, v. RICHFIELD OIL COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

Borton & Petrini for Appellants.

Siemon & Garber and Rowen Irwin for Respondent.

AMES, J., *pro tem.*—This is an action for personal injury. The negligence upon which the action is predicated, as disclosed by the allegations in the complaint and the evidence in support thereof, consists of defendant's failure to maintain lights upon the rear end of a combination of vehicles, consisting of a truck and trailer, which, it is claimed, was standing on the paved or improved portion of a public highway before sunrise, during the early morning hours of the day of the accident.

The testimony of the respondent may be summarized as follows: That on the fifteenth day of March, 1928, he was driving and operating an 8-cylinder V-type motor Peerless touring car on the state highway between Bakersfield and Los Angeles; his headlights had recently been adjusted and conformed to all provisions of the California Vehicle Act; that he could discern any substantial object on the highway

ahead of him at a distance of 200 feet; his brakes had recently been adjusted, and were in good working order; shortly before the accident occurred he had been driving his car at a lawful rate of speed and at no time in excess of 40 miles per hour. At the hour of about 5:15 A. M., and while it was still dark, he collided with the overhang of a load of oil-well machinery, which extended beyond the rear end of the trailer. The truck and trailer were standing on the paved portion of the highway, close to the center line. There was no red light, nor any light visible to him from the rear of the truck or trailer. When he first saw the truck and trailer, he was between 50 feet and 100 feet from the rear end thereof, and too close to stop with safety. He testified that these vehicles were not moving when he first saw them. As soon as the appellant's vehicles were seen by him, he applied his brakes vigorously; that he thought he saw some objects on the highway to the left of the truck and trailer, but whether or not the objects which he thought he observed were persons standing on the highway, or were merely shadows, he was unable to say, but under the stress of immediate danger, he attempted to pass to the right of the trailer, but in attempting to do so, collided with its projecting load, and, to quote his own testimony, he described this contact as follows:

"I struck some projected load that wiped the cowl and instrument board off the car and continued against my chest and pressed me against the back of the seat and crushed the front seat out and turned me bottom side up in the tonneau, tearing my legs open on the cushion in the tonneau, in the rear seat and crushing them and turned the back of the tonneau and then what seemed to be the upper corner of the truck ripped the fender off and torn through the side and damaged that and my car swerved by reason of the impact and locked with the rear of the truck which came to a full stop."

He further testified that between the time when he first observed the truck upon the highway and his impact with the trailer, about two seconds had elapsed, during which time he was able to distinguish the projecting portion of the load upon the trailer, and during that period observed that the truck was standing still. He testified as to the character of his injuries as follows:

"Nose and cheek bone broken, upper jaw broken and section torn out with teeth broken, antrum, I think they call it, part of the bone stock beneath the upper jaw-bone; a gash through the upper lip, and whatever it was passed through there and tore out the jaw-bone; roof of my mouth was crushed clear to the palate, the left shoulder was badly fractured, the left arm fractured in numerous places, just about two or two and a half inches."

On cross-examination, he attributed his failure to see the truck to a change of gradient in the highway, and in his further description of the accident, used the following language:

"I am quite, very sure what carried away the back of the seat carried away the cowl and struck me against the chest and the back and tore out the part of the tonneau and seat, was part of the projecting load."

After testifying that the only opportunity he had to observe the load on the truck was the period of two seconds which elapsed between the time when he first saw the trailer and his impact with its overhanging load, in answer to the following question: "You noticed the overhanging load on the trailer in that brief space of time?" he testified as follows: "Yes, after I started to turn with a big bar right in front of me."

It was stipulated by counsel at the trial that the paved portion of the highway at the point of the accident was 22 feet wide, and that there was room enough on the right-hand side of the pavement to have stopped and parked the truck and trailer off the pavement.

He further testified that he reached the conclusion that the appellants' vehicles were standing still, rather than moving, not only by reason of his observation of the trailer upon the highway, but for the further reason that he did not hear "the barking of the motor," which he contends he would have heard had the motor been in operation, drawing its heavy burden upon an upward grade.

On cross-examination appellants attempted to impeach the testimony of respondent on the issue that the truck was standing still, by reading into the record a portion of a deposition of respondent, in which he testified with respect to the appellants' vehicles: "I don't think they were traveling; if they were it was very, very slowly, but I got the

impression that they were standing; they might have been creeping along, but I remember not having observed the exhaust or barking report of the motor.'' The respondent called the driver of the truck as an adverse witness under the provisions of section 2055 of the Code of Civil Procedure, who testified that at the time of the accident the truck was traveling at the rate of two and one-half to three miles per hour. It is not disputed that the accident happened before sunrise and while it was still dark.

At the conclusion of the plaintiff's case defendants Ott and Richfield Oil Company of California moved for a nonsuit as to defendant Ott upon the ground "that there is no evidence at all showing, or tending to show, that Ott is in any manner concerned in the accident at all,'' and as to defendant Richfield Oil Company of California upon the following grounds:

''(1) That there is no evidence to establish the charge in the complaint that the defendant negligently, carelessly and without regard to the welfare or safety of others then and there stopped and parked his truck and trailer in the paved, improved portion of the said highway without any rear or tail-light. (2) That there is no evidence to sustain the remaining charge of negligence as follows: 'and negligently and carelessly and without regard to the welfare or safety of other persons then and there permitted said truck and trailer to stand on said public highway loaded with material that extended a distance of more than four feet beyond the rear and/or end of said vehicle without displaying at the extreme end of said load a red light or any light whatsoever' and further (3) on the ground of contributory negligence on the part of the plaintiff appearing conclusively as a matter of law.''

A nonsuit was granted as to both said defendants. Later, upon motion, a new trial was granted, as against both said defendants.

We may, at this point, dispose of the contention of defendant Ott. It appears from the testimony of defendant Cline, the driver of the truck at the time of the accident, that he was accompanied by a ''Mr. Ottie,'' who is described in the record as his ''partner.'' Assuming that the ''Mr. Ottie'' referred to is defendant Ott, it does not appear that he had any control over the operation of the

truck, but was merely accompanying Cline on the truck at the time of the accident. There was no error in granting the nonsuit as to defendant Ott, and the balance of this opinion will be directed to the propriety of the order in granting the motion for a new trial as to defendant Richfield Oil Company of California, which will hereafter be referred to in the singular number as the appellant.

The appellant contends that the acts of negligence having been alleged in the complaint in specific terms, the respondent is confined to the specific allegations contained in his complaint in the absence of a general allegation of negligence.

Paragraph III of the complaint, which alleges the negligent acts of appellant, is as follows:

"That the said defendants negligently, carelessly and without regard to the welfare or safety of other persons, then and there stopped and parked said truck and trailer on the paved, improved and main traveled portion of said highway without any rear or tail-light, and negligently and carelessly, and without regard to the welfare or safety of other persons, then and there permitted said truck and trailer to stand on said public highway, loaded with materials that extended a distance of more than four feet beyond the rear of the bed and/or body of said vehicle without displaying at the extreme end of said load a red light or any light whatsoever."

Appellant argues that the words in the foregoing paragraph "without any rear or tail light" are not an allegation of anything, but is a modifying phrase, tending to aggravate the alleged negligence of stopping and parking the truck and trailer on the highway, and that it is not an allegation that appellant was driving and operating its truck and trailer at night-time without a tail-light. In its answer appellant denied generally all of the allegations in paragraph three of the complaint.

The question here involved is purely a question of pleading, going to the sufficiency of the complaint, and no demurrer, either general or special, having been filed, and evidence of the failure of the appellant to maintain the lights required by law having been introduced without objection to its competency or materiality, we think the insufficiency of the complaint was waived. The question was raised for

the first time on appellant's motion for a nonsuit, but it has been held that an action cannot be dismissed on motion for a nonsuit by reason of a defective pleading.

In *Scott* v. *Sciaroni,* 66 Cal. App. 577 [226 Pac. 827, 829], it is said: "Respondent contends that the judgment of nonsuit was properly entered on the ground of insufficiency of the complaint in various particulars. There are two answers to this contention. First, the grounds now urged were not stated in the motion for a nonsuit, and second, insufficiency of the complaint is not a statutory ground for granting a nonsuit."

To the same effect are *Keefe* v. *Keefe,* 19 Cal. App. 310 [125 Pac. 929], and *Pacific Paving Co.* v. *Vizelich,* 141 Cal. 4 [74 Pac. 352].

█ The acts of the appellant which, it is claimed, constitute negligence, are prohibited by sections 99, 106, subdivision (a) of section 110 and a portion of section 136 of the California Vehicle Act. Since these provisions should be borne in mind throughout the ensuing discussion we quote them in full.

"99. Vehicles Must be Equipped With Lights. Every vehicle when upon any public highway within this state during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred feet ahead, shall be equipped with lighted lamps and lighted headlights as herein respectively provided for different classes of vehicles and subject to such exceptions as are set forth in this act.

"106. Rear Lights. Every motor vehicle and every trailer or semi-trailer, which is being drawn at the end of a train of vehicles, at the time and under the conditions specified in section ninety-nine, shall carry at the rear a lighted lamp exhibiting a red light plainly visible under normal atmospheric conditions for a distance of five hundred feet toward the rear and so constructed and placed that the number plate carried on the rear of such motor vehicle or trailer shall be illuminated by a white light in such manner that the number plate thereon can be plainly distinguished under normal atmospheric conditions at a distance of not less than fifty feet toward the rear.

"110. Light or Flag at End of Load. (a) Whenever any vehicle shall be loaded with any material in such a manner that any portion of such load extends toward the rear four feet or more beyond the rear of the bed or body of such vehicle, there shall be displayed at the extreme end of the load at the times and under the conditions specified in section ninety-nine in addition to the ordinary rear light hereinbefore required to be displayed on such vehicle, a red light plainly visible under normal atmospheric conditions at least two hundred feet from the rear, and at all other times while such vehicle is upon the highway a red flag or cloth not less than sixteen inches in width shall be displayed at the extreme rear of said load as a warning signal to persons operating vehicles approaching from the rear.

"136. Stopping on Highway. No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway, outside of a business or residence district when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon."

Appellant next contends that the testimony of the respondent, which we have hereinbefore summarized, does not tend to prove that the truck and trailer were parked or standing on the highway at the time of the accident in violation of section 136 of the California Vehicle Act above quoted, but there is evidence of certain physical conditions which existed shortly after the accident which, in connection with the testimony of the plaintiff should, we believe, have been weighed by the jury in determining that issue. Witness Clarence Batone visited the scene of the accident between 6 and 7 o'clock, and within about one hour after the collision occurred. He found the Peerless car in contact with the truck on the right-hand side of the latter, apparently in the same position as it was immediately after

the collision, and after testifying as to his observations of skid marks on the pavement, he testified as follows:

"Q. You said there was some brake marks or skid-marks where the brakes had been set? A. Brake marks for the trailer and car.

"Q. What marks were there for the trailer? A. Whenever I was there still the trailer was moved over right, just the car moved over right.

"Q. You mean like that (indicating)? A. Something like that, on solid tire.

"Q. Was there more than one of those marks? A. Two of them. One each side of the trailer.

"Q. Which wheels of the trailer? A. The right and the left.

"Q. Rear wheels? A. Yes, sir. Here is a little bit it skid."

Ben Hunter, a traffic officer, arrived at the scene of the accident between 8:30 and 8:45 A. M. Respondent's car had been moved, but the truck and trailer were still standing on the highway. The following is a portion of his testimony:

"Q. Did you observe any marks in the pavement in the vicinity of the trailer? A. Yes, sir.

"Q. What sort of marks were they and where were they located with reference to the trailer wheels? A. The only one I noticed was to the rear and left of the trailer.

"Q. The rear left wheel of the trailer? A. Yes, sir.

"Q. What sort of mark was that? A. Side skid mark."

And after illustrating the position of the wheels of the trailer with respect to the skid marks about which he had testified upon a blackboard, proceeded as follows:

"Q. That is a mark that apparently had been made by the left rear wheel of the trailer? A. That is what I presumed it had been made by.

"Q. What kind of a skid mark was it, was it a mark of rubber on the pavement or a mark of iron on the pavement? A. It looked to me like it was a mark of rubber.

"Q. Where was the trailer, where was it standing when you saw it, with reference to that skid mark? A. At the end of the skid.

Q. Could you tell from the appearance whether the truck had moved since it had skidded? A. Did not look like it, standing at the end of the skid mark like this. Looked like it had been marked this way and stopped right here. That was the way I found it."

Witness Walter Combs visited the scene of the accident about 7:15 A. M. and testified as follows:

"Q. Did you notice any skid marks at the time? A. Yes, sir.

"Q. Tell just what you saw with reference to skid marks. A. The two rear wheels of the trailer had been caused to slide to the right, looking from the back end, and just slightly forward. It did not slide squarely across the highway, just a slight forward movement, looked to be rubber marks on the highway, too.

"Q. Where were the wheels of the truck with reference to the skid-marks? A. The wheels of the trailer, you mean.

"Q. The trailer, I should say? A. The trailer wheels were setting right on the end of the skid-marks, setting right where they had stopped, when it was sliding side-wise.

"Q. The skid-marks were to the right? A. Yes, sir, to the right standing behind the trailer looking south.

"Q. And the wheels, two rear wheels of the trailer stood right on the end of these skid-marks? A. Yes, sir, right on them."

This witness further testified as follows:

"Q. When you observed the trailer was it standing at right angles to the center of the road? A. The rear end was slightly to the right. The rear end of the trailer was diagonally across the highway, probably three or four or five inches, the rear end was closer to the outside than the front.

"Q. To that extent the trailer was standing diagonally across the road? A. Just slightly, not to a great extent.

Witness H. L. Spear testified that he arrived at the scene of the accident at about 9:30 A. M. That "the truck was setting straight on the highway and the trailer had been pushed as at an angle over towards the right side of the road." That in referring to the rear wheel of the trailer, he also testified that there was a skid mark "where the wheel had stopped on the trailer." That the skidding of the trailer was on the rear wheels. That the wheels were "set-

ting right on top of the skid marks, evidently it had skidded.''

We believe that the testimony of respondent is amply corroborated by witnesses Batone, Hunter, Combs and Spear, and that the jury could infer from the fact that the rear wheels of the trailer were standing on the right end of the skid marks which they had apparently made on the pavement, and that the trailer was standing at a different angle from that at which the truck was standing, with no evidence of these vehicles having been moved since the collision had occurred, that they were both standing still at the time of the collision.

We will now proceed to a consideration of the testimony of respondent's witnesses which tends to prove that the oil-well equipment, with which the trailer was loaded, extended a distance of four feet or more beyond the rear end of that vehicle. This element of the case is material in view of the provisions of section 110 of the California Vehicle Act above quoted, requiring a red light, in addition to the ordinary tail-light, to be displayed when the load on a vehicle extends four feet or more toward the rear, beyond the rear end of the body of the vehicle. Witness Hunter testified that he did not remember whether or not the valves projected; that there was one valve that might have projected slightly that was just where respondent's car would have hit. Witness Combs testified that the trailer was loaded with heavy machinery that looked like mud-pumps and one or two pipes which he described as ''about six-inch pipe,'' and in testifying as to a conversation had with the driver of the truck, his evidence was as follows:

''Q. What did they say, if anything, about the load on the trailer? . . . And particularly with reference to the position of the pump having been changed on the trailer, what did he say about that pump having been shifted? A. He said it hit it hard enough to move the load, or pump, I don't know which word he used. He called my attention to, pointed to the machine setting near the corner of the trailer.''

It should be borne in mind that at the time of the accident respondent was driving a large eight-cylinder touring car; that his injuries were particularly severe in and around

his mouth; that both the front and rear seats in his automobile were damaged as a result of coming in contact with some object; that according to his testimony, he struck "a projected load that wiped the cowl and instrument board off the car" and continued against his chest; that from the admission of the driver of the truck it can readily be inferred that some portion of the overhanging load was shoved forward and to the right, and while it is true that there is no direct evidence that the overhang of the load at the rear end of the trailer was four feet or more in length, we think that there is ample evidence from which the jury could have drawn that inference.

But assuming that the evidence above adverted to was insufficient to prove the absence of the red light on the rear end of the trailer, there is in the record the positive testimony of respondent that no light was visible. Independently of failure of appellants to maintain a light at the end of its projecting load as required by section 110a of the Vehicle Act there was evidence tending to show that no light whatever was visible, which of itself would constitute a violation of section 99.

We are next urged to say, as a matter of law, that respondent's negligence contributed to his injury.

It is true that respondent testified that he did not know why he was unable to see the vehicles of appellant, but attributed his failure to do so to a change of gradient in the highway. Other witnesses called by plaintiff were unable to substantiate this contention and respondent, upon subsequent visits to the locality of the accident, was unable to identify the place on the highway where the accident occurred. However, if we disregard this testimony of respondent, we still think that his evidence fails to establish as a matter of law that his own negligence contributed to the accident.

In the case of *Haynes* v. *Doxie,* 52 Cal. App. 133 [198 Pac. 39, 40], the plaintiff was driving his car at a moderate and lawful rate of speed over a paved highway which, at and before approaching the scene of the accident, was slightly down grade. A downpour of rain reduced visibility and owing to the wet pavement his car had a tendency to skid. He was driving on his right-hand side of the highway and defendant's truck was standing near the

center thereof without a light exposed on its rear end, and plaintiff did not see the truck until within twenty-five or thirty feet of it. Under these circumstances a higher degree of care would be required of plaintiff than was necessary for the respondent in the instant case. Appellant contended for the rule that it was negligence for the driver of an automobile to drive on the highway on a dark night at such a rate of speed that he could not avoid objects after they came within the area illuminated by his lights. In that case, as in this one, the court was asked to say that plaintiff, as a matter of law, contributed to the accident by his own negligence, and in declining to do so the court says:

"The fact that respondent was not able to see and did not see, the unlighted truck until he was within twenty-five or thirty feet of the same does not fully establish the facts necessary to give appellant the benefit of the rule above stated. Notwithstanding the facts stated, it may also be true that if the truck had been lighted, as required by law, plaintiff would have been able to see it, and would have seen it, while at a distance great enough to have enabled him to stop his automobile and avoid the collision. The condition of the road, as to its openness and the distance to any point of intersection or any railroad crossing was known to both parties, and the plaintiff was entitled to proceed at a rate reasonable under those conditions.

In the case of *Schurman* v. *Los Angeles Creamery Co.,* 81 Cal. App. 758 [254 Pac. 681], the plaintiff collided with an unlighted wagon, which was approaching him from an opposite direction, a portion of which was encroaching on the half of the highway where he was traveling. In refusing to hold that plaintiff was guilty of contributory negligence the court says:

"Appellant asks the court to determine, as a matter of law, that a person traveling in the highway at night must see every object on his half of the highway, in face of the fact that automobile engineers and manufacturers are expending vast sums of money in extensive research to develop lights that will measure up to appellant's requirements, and have so far been but partly successful. In order that this court could determine as a matter of law, that respondent was guilty of contributory negligence much more is required than would be sufficient in the trial court to sustain a find-

ing of fact to the same effect. It must be clearly shown from the undisputed facts, judged from the light of common knowledge and experience, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure. The evidence against plaintiff should be so clear as to leave no room for doubt, and the facts such that the inference is irresistible, to justify this court in determining, as a matter of law, plaintiff guilty of contributory negligence against such a finding.''

The facts in the case of *Mostov* v. *Unkefer,* 24 Ohio App. 420 [157 N. E. 714], are similar to the instant case. The accident out of which the action arose occurred in Michigan, but the trial was had in Ohio. Plaintiff was accompanied by her husband, who was driving the automobile in which they were riding at night, and collided with the rear end of defendant's truck, which was left standing on the highway without a red light or any light exposed at the rear end of the truck, in violation of a statute in Michigan, similar to ours, requiring a red light at the rear end of a truck upon the highway. There was evidence to the effect that the driver of the car could see by his own lights a substantial object 200 feet ahead and actually saw the truck at a distance of 75 or 100 feet therefrom. Defendant invoked the doctrine that the negligence of the husband should be imputed to the wife and contended that the court erred in refusing to direct a verdict for defendant, on the ground of contributory negligence of the driver. In holding that the question of contributory negligence was a question of fact for the jury, the court of appeal of Ohio says:

''In the instant case the driver of the coupe had a right to assume that the law would be obeyed and that an unlighted truck would not be left parked on the paved portion of a much traveled highway and was therefore confronted with a sudden and unexpected emergency.''

And it is the rule in California that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person, provided, of course, that such person himself use reasonable

care to observe the conduct of the other person so far as as such conduct may affect his own safety at the time. (*Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155] ; *Swartz* v. *Faddershon*, 92 Cal. App. 285 [268 Pac. 430] ; *Barton* v. *Studebaker Corp. of America*, 46 Cal. App. 707 [189 Pac. 1025] ; *McPherson* v. *Walling*, 58 Cal. App. 563 [209 Pac. 209].)

The appellant, in the instant case, concedes that the respondent was driving at a lawful rate of speed, that his brakes were in good working condition and that his lights complied, in every respect, with the provisions of the California Vehicle Act.

■ The rule is well established in this state that when the evidence is such that the court is impelled to say that it is not in conflict on the facts, and that from those facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, then, and then only, does the law step in and forbid plaintiff a recovery. Even where the facts are undisputed, if reasonable minds might draw a different conclusion upon the question of negligence, the question is one of fact for the jury. (*Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631] ; *White* v. *Davis*, 103 Cal. App. 531 [284 Pac. 1086], and cases there cited.) We conclude that the evidence failed to show contributory negligence as a matter of law.

■ But one more point remains to be disposed of.

The case was tried by Honorable Rollin Laird, late judge of the Superior Court of Kern County. Subsequent to the entry of judgment, and prior to the making of the motion for a new trial, Judge Laird died and the motion for a new trial was made and argued before Honorable Erwin W. Owen, a judge of the Superior Court of Kern County.

At the hearing of said motion for a new trial appellant filed a written objection to the hearing of the same by Judge Owen upon the following grounds:

"That the judge hearing said motion is not the same judge who presided at the trial of this case, and heard the evidence, and has no personal knowledge nor recollection of the elements of evidence offered and received in said cause. That a diagram was made upon a blackboard during the trial of said cause; that as appears from the transcript of

testimony herein, and from the affidavit of F. E. Borton filed herewith, said diagram in and of itself, contained evidence material to the question of contributory negligence on the part of plaintiff, and that said diagram is not before this court nor capable of being considered by this court on this motion."

The objection is supported by an affidavit of F. E. Borton, counsel for the appellant, in which he recites:

"That in the trial of this cause before the late Hon. Rollin Laird, and a jury sitting in Department One of the Superior Court of the county of Kern, state of California, a blackboard was employed by various witnesses for the plaintiff and designs and diagrams were placed thereupon with chalk. That said diagram was illustrative and explanatory of the testimony of the witnesses and in addition thereto was employed in certain particulars by such witnesses as a visual representation of the facts which in such instances were not stated otherwise and do not otherwise appear than as upon said diagram."

Appellant concedes that a judge, other than the judge who presided at the trial, has the power to hear and determine a motion for a new trial, but, he argues, when a motion for a new trial is made upon the minutes of the court, which was done in this case, reference may be had, among other things, "to such proceedings occurring at the trial as are within the recollection of the judge" (Code Civ. Proc., sec. 660), and contends that the authority of a judge, other than the one who tried the case, should not be enlarged or extended.

Were we inclined to view this contention with approval, the facts in the case do not justify our doing so. Our attention is particularly called to the testimony of witnesses Batone and Hunter, who, in the course of giving their testimony, amplified certain portions thereof upon a blackboard, upon which a drawing representing the respective positions of the vehicles on the highway had been made. But an examination of the testimony of these witnesses discloses the physical conditions upon the highway and the facts to which they testified can be readily visualized from their oral testimony, without the aid of the drawing, which was merely incidental thereto.

The order appealed from is affirmed as to defendant Richfield Oil Company of California and reversed as to defendant Ott.

Marks, Acting P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 11, 1930.