[Crim. No. 4069.  Second Dist., Div. One.  Apr. 17, 1947.]

THE PEOPLE, Respondent, v. HERMAN L. NEIGHBORS, Appellant

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

DORAN, J.—Defendant was adjudged guilty by a jury of the offense of second-degree burglary in one count and in a second count of grand theft. The facts briefly are as follows: A branch office of the Western Union Telegraph Company at San Pedro, California, was burglarized and a small safe weighing about five hundred pounds was removed. The offense was committed on the night of Sunday, December 16, 1945, or early Monday morning. The safe was found later; it had been opened and the contents consisting of $8,000 in negotiable checks and over $7,000 in currency had been removed. Two of the checks were later deposited by defendant to his account in a San Pedro bank; one on February 11, 1946, and the other on March 2, 1946. These checks, referred to in the record as "Treasury checks" were drawn on the "Treasurer of the United States" as "Fort MacArthur"; one in the sum of $179.75 and the other for $194.93. Defendant was arrested March 11, 1946. When taken to the police station at San Pedro defendant admitted the burglary and theft to four police officers.

A pair of trousers and a shirt obtained at defendant's home after the arrest which were said to show cuts supposedly from broken glass, were in evidence.

At the trial defendant admitted having confessed to the officers but testified further in substance that it was to avoid punishment likely to result from possession of the aforesaid

mentioned "government checks" and because of a promise on the part of the officers that the punishment would be only a jail sentence. For example, defendant testified, referring to one of the officers, "And then he said I can either answer to the Federal government or rap, I forget the term he used, for 10 years on these stolen checks, Government checks, that was taken out of this Western Union, or if you want to co-operate with us and help us clear up this job we will help you in every way we can, I think we can promise you a light jail sentence and we won't oppose straight probation." There was also evidence that defendant was in Modesto at the time of the alleged offense.

It is contended on appeal that the court erred, "in refusing to give certain instructions and in giving other instructions." The jury was instructed that "it is wholly immaterial on what day or night the offense charged in the information was committed, provided you believe from the evidence it was committed, and that the same was committed within three years prior to the filing of the information in this case"; and on the subject of alibi was instructed as follows: "An alibi simply means that the defendant was at another place at the time the crime charged is alleged to have been committed. All the evidence should be carefully considered by you, and, if the evidence on the subject, considered with all the other evidence, is sufficient to raise a reasonable doubt as to the guilt of the defendant, you should acquit him. It is sufficient to justify an acquittal if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged, if you find that a crime was committed."

It is argued that the former is misleading and the latter insufficient in the circumstances. Inasmuch as the defendant testified that he was in Modesto and a witness from Modesto corroborated the defendant, it is argued that the law as set forth in *People* v. *Ralls*, 21 Cal.App.2d 674 [70 P.2d 265], and *People* v. *Morris*, 3 Cal.App. 1 [84 P. 463], should have been applied. There is merit to appellant's argument. The time of the offense was material and the trial court might well have so instructed the jury instead of the above quoted instruction to the contrary. (See *People* v. *Waits*, 18 Cal. App.2d 20 [62 P.2d 1054].)

It is also contended that the instruction on "confessions," was not sufficiently comprehensive in the light of the record. The instruction complained of properly submitted

to the jury the responsibility of determining the character of the confession, as follows: "If there is any conflict in the testimony between the prosecution witnesses and the defense as to the voluntary character of such a confesison, it is up to the jury and is the province of the jury to decide the question as to whether such confession was freely and voluntarily made or was an involuntary confession and made because of threats or some promise of leniency made to him in order to get the statement of confession." It is argued, however, by appellant that a consideration of the question was limited to "promises" and "threats" by the following additional sentence, "If you find that such a statement was the result of promises made to the defendant, or threats made against him, then you must find that the confession was involuntary and you must disregard such a confession." More comprehensive instructions requested by defendant were refused. Inasmuch as evidence of defendant's guilt was chiefly evidence of a confession, the court could have given the instruction on the subject of confession as requested by defendant and been well within the rule as set forth in *People* v. *Fox*, 25 Cal.2d 330 [153 P.2d 729].

The defense sought to rebut the testimony of the police officers as to what was said and done at the time the alleged confession was obtained. Harold L. Johnson, who was not an officer but who was present at that time and place, was examined as a witness for the defense; the following are excerpts from the reporter's transcript:

"Q. Well, state what was said.

"Mr. WILDEY: Was this in the presence of the defendant?

"Mr. HIX: In the presence of the defendant, yes.

"Mr. WILDEY: May I inquire, your Honor, is this as to one of the conversations which have been testified to by the officers?

"Mr. HIX: I suppose so.

"Mr. WILDEY: Then if that is true the objection was right, that no foundation was laid for the purpose of impeachment. I cannot see any other purpose in this.

"Mr. HIX: Well, your Honor, that does not necessarily follow, but one of the theories of the defense is the involuntary character of the alleged confession.

"THE COURT: Well, in other words, it is for impeachment, to impeach the officers in what they said in regard to it being free and voluntary?

"The Court: Then the objection will be sustained. There is no foundation laid for impeachment purposes. It could only be offered for three purposes: It can only be offered for direct testimony pertaining to the issues in this case, or to refresh the recollection of the witness, or for impeachment.

"Mr. Hix: Well, on direct testimony——

"The Court: There can be nothing, as I see it so far, where it could be anything but impeachment.

"Mr. Hix: If your Honor please——

"The Court: No, I sustained the objection. I was just explaining it to you.

"Mr. Hix: If your Honor please, I would like to make an offer of proof, if your Honor please. Shall I do it out of the presence of the jury?

"The Court: Yes.

"(The following proceedings were had at the bench out of hearing of the jurors.)

"Mr. Hix: The defendant offers to prove by this witness that the officers stated if the defendant and this witness would plead guilty they would see to it that they got nothing more than a jail sentence; otherwise that they would go to the penitentiary.

"Mr. Wildey: Is that all?

"Mr. Hix: Yes.

"Mr. Wildey: I renew the objection heretofore made.

"The Court: It is for impeachment purposes? It could be only that. It could be only for impeachment purposes, to impeach the officers. It does not prove or disprove any issue——

"Mr. Hix: It is to prove——

"The Court: It is not for the purpose of proving a material allegation in this case.

"Mr. Hix: It is to prove that there were promises made and that any confession was the result of the promises.

"The Court: You have an objection——

"Mr. Wildey: Yes, I renew my objection made, incompetent, irrelevant, and immaterial, and no foundation laid.

"The Court: The objection will be sustained. You have to lay a foundation for this. You have to lay a foundation. When you had the police officers on the stand why didn't you ask them if this witness was present at the time and if you didn't say so-and-so in his presence? If you didn't, you haven't laid the proper foundation to offer the proof. I will sustain the objection."

The rulings were error 'and clearly prejudicial. The defendant was thus foreclosed from introducing affirmative evidence on an issue vital to the defense. No foundation was necessary; the rules relating to impeachment did not apply. The defense, when the prosecution rested, had the right to prove by independent and affirmative evidence, if such was available, everything that occurred at the time the confession was obtained. Its value was for the jury to determine.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

York, P. J., and White, J., concurred.