[Civ. No. 22736.   First Dist., Div. One.   Aug. 15, 1966.]

A. DAVID SHALLENBERGER, JR., Plaintiff and Appellant, v. ROBERT D. DUNCAN, Defendant and Respondent.

Kurt W. Melchior, Severson, Werson, Berke & Larson and Bernardus J. Smit for Plaintiff and Appellant.

John J. Hayes, Jr., and DeKlotz & Hayes for Defendant and Respondent.

SULLIVAN, P. J.—In this action for dissolution of an alleged oral partnership or, in the event none was found, for breach of an agreement to enter into a partnership, plaintiff appeals from a judgment after a nonjury trial that he take nothing by his complaint.

Plaintiff and defendant first met in college in 1950. There they also met David Beatty whose father owned the Beatty Scaffolding Company. In the fall of 1956 the three young men discussed the establishment of a Beatty distributorship in the Monterey area, but nothing materialized. In July or August of 1958 defendant, having talked to Beatty about the possibility of a distributorship in Sacramento, telephoned plaintiff to see if the latter would be interested in discussing it further. There followed two or three conversations about the Sacramento distributorship, which defendant was considering as an investment and which he wanted plaintiff to operate for him. Apparently defendant then made further inquiries of young Beatty and was dissuaded by the latter from entering the Sacramento area.

The discussions continued with reference to a possible distributorship in San Jose. It is noteworthy that when plaintiff first indicated that he was interested, defendant asked him how much he would require in the way of salary. Defendant did not recall plaintiff's reply. He testified however that he told plaintiff "if he decided to make this move, that at some time in the future he could acquire some ownership interest in the business." In the meantime defendant negotiated with the Beatty company for a franchise and at the end of September 1958 signed a franchise agreement for the San Jose area. Plaintiff did not participate in the negotiations although defendant advised him of them when they were completed. Defendant incurred personal obligations for scaffolding equipment which he agreed to buy when he signed the franchise agreement. Between November 1958 and April 1959 he advanced to the business funds which he had borrowed from others on his personal note. Plaintiff did not sign the franchise agreement, the leases covering the equipment or the note covering the loan for the business. Nor did he himself ever advance any funds to the business.

The distributorship opened for business on November 17, 1958 under the name of Beatty Scaffold of San Jose, although actually the business seems to have been operated by the C. L.

Duncan Company under that name.[1] In 1960 the name of the business was changed to Beatty-Safway Scaffold of San Jose; in May 1960 it became Safway Steel Scaffold of San Jose. Under the franchise agreement, the distributorship was allotted the territory of Santa Clara, Monterey, Santa Cruz and San Benito counties. The business involved the sale and rental of scaffolding, bleachers, grandstands and stages. Prior to its commencement both plaintiff and defendant spent two or three weeks attending a training course at the Beatty firm in San Francisco, plaintiff working with scaffolding crews to learn construction methods and defendant working out various administrative problems relating to purchases, sales and inventory. At the start of the business, both men sold, estimated and erected scaffolds with defendant doing ''the administrative paper work.'' As the business grew, defendant took over the administrative part of the company. This arrangement prevailed until about September 15, 1962 when plaintiff decided to leave the company and start his own business. At this time plaintiff told defendant that he ''felt that [he] should have something from the company. . . . He [defendant] told me, under the circumstances, there would be nothing. So I felt there would be no more discussion on it with him on that point.''

Plaintiff admitted under cross-examination that except on the occasion of his leaving the business, he never at any time demanded an ownership interest; that during the four years from 1958 to 1962 he never asked for any indication of ownership; and that although he knew that shares of stock had been issued in 1962, he never asked that any shares be issued to him. The uncontradicted evidence shows that during the entire four-year period plaintiff was paid a salary. He admitted at the trial that his salary was set by defendant; that he never asked for a raise; that defendant gave him an increase in salary which he accepted; that he could not sign the company checks; that he submitted his business expenses to defendant who reimbursed him for them; that he himself never advanced or contributed any funds to the business; and that from his review of the financial statements he was aware of the fact that the ownership of the business was listed in defendant's name.

---

[1]Defendant testified that C. L. Duncan Company was a dormant corporation in which his mother had at one time owned stock. It had formerly operated a paint manufacturing business and was ''reactivated'' by defendant to operate the scaffolding distributorship under the above fictitious name.

The pretrial conference order and the testimony of the principals reflect an issue sharply drawn as to the relationship between the parties. According to plaintiff, he and defendant were partners and remained such throughout their four years together; he had told defendant at the start that he wanted a part of the business and the latter said "I could have it"; and defendant had agreed that plaintiff had a 40 percent interest in the company. According to defendant he had told plaintiff that if the latter worked hard and the business was successful, plaintiff would at some future time be given some interest in the business.

The trial court found and concluded that plaintiff and defendant did not orally agree to commence a business and did not enter into any partnership; that they did not agree that plaintiff was to have a 40 percent or any other interest in the business involved; that they did agree that plaintiff would be an employee of the scaffold business commenced by defendant and that plaintiff was such an employee during the period involved; and that plaintiff should take nothing by his complaint. Judgment was entered accordingly.

Plaintiff's sole contention on appeal is that the court committed prejudicial error by requiring him to lay a foundation for the introduction of certain conversations between himself and defendant, thereby preventing him from proving the vital part of his case. The gist of plaintiff's argument is as follows: An oral partnership must be determined from the declarations of the alleged partners as well as from their transactions and conduct, a thesis, incidentally, with which defendant does not quarrel; essentially uncontradicted evidence (so plaintiff claims) strongly suggested the existence of such an agreement; however, because of the court's ruling requiring a foundation, plaintiff was denied the opportunity of relating the conversations between the parties and thus presenting "direct and material evidence" as to what the oral agreement was.

The rulings of which plaintiff complains can be considered in two groups: first, those relating to five incidents occurring in fairly close succession during the direct examination of plaintiff; and, second, an incident occurring during the direct examination of plaintiff's witness David Beatty.

Plaintiff first testified[2] as to the nature of his and defendant's initial discussion, as to the abandonment of the Sacra-

---

[2]Plaintiff's present counsel on appeal did not represent him at the trial.

mento plans and as to the holding of several meetings with defendant about November 1, 1958, which were attended by Beatty. He stated that the only specific one of the last mentioned meetings which he could remember was that held in his mother-in-law's apartment. Shortly thereafter the witness was asked to relate the conversations between himself and defendant "on the functions of the business" in San Jose, in an apparent attempt to establish what they had agreed upon. Upon defendant's objection to their admission "until a foundation is laid," the court urged plaintiff's counsel to "try to pinpoint them as closely as you can, where and when, and who was present." The witness thereupon testified as to the "specific items of the agreement" discussed with defendant whereupon defendant moved to strike the answer as being a conclusion and opinion. A fair reading of the transcript indicates that this motion was granted. After a short colloquy between the court and counsel plaintiff was asked "what were those discussions?" Defendant again objected and again the court advised plaintiff's counsel that he must first establish a foundation.[3] Plaintiff thereafter related certain conversations as to salary and territory and was asked what he discussed with defendant as to the location of a warehouse. Upon objection by defendant's counsel that a foundation had not been properly laid, the court again indicated that "That is how you will have to proceed." Ensuing testimony in reference to the warehouse was interrupted by defendant's objection that the witness "seems to lump three or four meetings into one" and that the testimony should be narrowed down. The court then inquired: "If you can remember, can you tell us which trip that this warehouse was discussed" and the witness appears to have answered the question fully.

The witness Beatty, having testified as to a proposed distributorship in San Jose rather than in Sacramento, was asked "what were your conversations [with plaintiff and

[3]The following occurred: "THE COURT: . . . He will have to tell us what was said. MR. JORDAN [Plaintiff's counsel]: And conduct, too, your Honor. THE COURT: Conduct. What was said, who said it, and where it was said and the dates. MR. JORDAN: Well, can I go into the specific items and discuss each one of those? I think it would just save time. THE COURT: Well, as long as you follow the rules, I don't care which way you do it. MR. JORDAN: Very well, your Honor. Q. (By Mr. Jordan) Did you discuss a salary? A. Yes. Q. And what were those discussions? A. Those—— MR. HAYES [Defendant's counsel]: Excuse me, your Honor. Again, I object. THE COURT: Now, first you have to establish a foundation. Now, where was that discussion, when, and who was present?"

defendant] in that regard . . . ?'' An objection interposed on the ground that no foundation had been laid was sustained by the court.[4]

■ Except in instances of impeachment,[5] there is no rule of evidence requiring that a foundation be laid as to the circumstances of time, place and parties present before a witness may be asked if he had a conversation or what the conversation was. (*People* v. *Barr* (1933) 134 Cal.App. 383, 387-388 .[25 P.2d 503] ; *LeCyr* v. *Dow* (1939) 30 Cal.App.2d 457, 464 [86 P.2d 900] ; 3 Am.Jur., Proof of Facts, p. 383; Witkin, Cal. Evidence (1958) § 668, pp. 706-707.) ■ In the instant case it is obvious that no impeachment was contemplated. Plaintiff was merely being asked to state what was said by him and defendant at their various meetings and thereby to establish.the operative facts of any agreement between them. Under these circumstances there was no necessity of laying a foundation. If defendant desired to show the circumstances of the .conversation, he could have brought them out on cross-examination. (*People* v. *Barr, supra.*)

Plaintiff argues that the court's rulings were erroneous because he was attempting to introduce the conversations as admissions of defendant. ■ As plaintiff correctly points out, the rule·is well settled that no foundation as to time, place and.persons present need be laid before admissions may be introduced. .(*Diller* v. *Northern Cal. Power Co.* (1912) 162 Cal. 531, 538 [123 P. 359] ; *Swartz* v. *Feddershon* (1928) 92 Cal.App. 285, 291-292 [268 P. 430] ; *Pece* v. *Tama Trading Co.* (1937) 22 Cal.App.2d 219, 223 [70 P.2d 652] ; *People* v. *Neighbors* (1947) 79 Cal.App.2d 202, 205-207 [179 P.2d 647] ; *People* v. *Capps* (1954) 129 Cal.App.2d 429, 431 [277 P.2d

[4]The following took place: ''MR. HAYES [Defendant's counsel]: . . . I want something more specific. . . . There is no foundation for any testimony of the discussions as yet. THE COURT: The foundations have to be established.''

[5]Where it is sought to impeach a witness by evidence of his prior inconsistent statements, a foundation must first be laid by questioning *the witness to be impeached* and before his statements inconsistent ''with his present testimony'' may be shown, ''the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them.'' (Code Civ. Proc., § 2052; *Young* v. *Brady* (1892) 94 Cal. 128, 130 [29 P. 489]; *People* v. *Singh* (1920) 182 Cal. 457, 481 [188 P. 987] and cases there cited; *People* v. *Sykes* (1955) 44 Cal.2d 166, 172 [280 P.2d 769], cert. denied 349 U.S. 934 [75 S.Ct. 780, 99 L.Ed. 1263] ; *People* v. *Raven* (1955) 44 Cal.2d 523, 525 [282 P.2d 866] ; *People* v. *Barr, supra,* 134 Cal.App. 383, 387-388; *LeCyr* v. *Dow* (1939) 30 Cal.App.2d 457, 464· [86 P.2d 900] ; Witkin, Cal. Evidence (1958) § 666, pp. 704-705.)

39]; 4 Wigmore on Evidence (3d ed.) § 1051, p. 8; Witkin, Cal. Evidence (1958) § 223, p. 250; McBaine, Cal. Evidence Manual, § 834, p. 275.) ▮▮ While defendant's admissions could have been used to prove the alleged agreement, we think that the proffered evidence need not be so narrowly viewed and that the admissibility of the conversations without laying a foundation can rest on the broader basis explained above.

However, we do not think that the rulings complained of were prejudicial so as to require a reversal of the judgment. Our examination of the record satisfies us that notwithstanding the rulings, which were but brief episodes in the trial,[6] plaintiff's counsel proceeded to follow the court's directions, to question the witnesses as to the circumstances of the various conversations and eventually to elicit from them the evidence as to the declarations of the parties supporting plaintiff's theory of the case. Indeed from our reading of the testimony, said counsel appears to have acquiesced in the rulings and as a part of sound trial tactics (see McCormick on Evidence, pp. 120-121) to have accommodated himself to the directives of the court.

Plaintiff insists that the rulings resulted in his being restricted to only one occasion, a meeting in his mother-in-law's apartment, where he was able to satisfy the erroneous foundation requirements. However, the record shows that plaintiff and Beatty testified not only to conversations at the above meeting but also to several other conversations. It is argued that since the parties met frequently before the business commenced, "it would be impossible for any man to pinpoint years later the exact time and place and circumstance of each admission." While this is understandable, contrary to plaintiff's claim, plaintiff was not in fact foreclosed from introducing evidence vital to his case. (Cf. *People* v. *Neighbors, supra,* 79 Cal.App.2d 202, 207.) As we have pointed out the record contains testimony introduced to support plaintiff's theory of the case, namely that plaintiff initially told defendant that he wanted a part of the business, that defendant agreed to such arrangement and that defendant further agreed that plaintiff would have a forty percent interest. Unfortunately for plaintiff the record also contains abundant evidence introduced by defendant in conflict with plaintiff's theory of

---

[6]The incidents in reference to plaintiff's testimony extend over approximately 5 pages of a total of 65 for said witness. The single incident involving Beatty extends over 10 lines of a total of 20 pages of testimony.

the arrangements between them. The trial court resolved this conflict, finding that plaintiff was an employee and not an owner. The sufficiency of the evidence to support the trial court's determination is not challenged. Nor could it be. Notwithstanding the errors alluded to above, plaintiff had an opportunity to present his side of the case, was afforded a fair trial and suffered no miscarriage of justice.

The judgment is affirmed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied September 14, 1966.