[Civ. No. 3729. First Appellate District, Division One.—June 10, 1921.]

E. PORTER SMITH, Respondent, v. ASSOCIATED OIL COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—BURNING OF BUILDINGS—SPILLING OF DISTILLATE—SUFFICIENCY OF COMPLAINT.—In an action to recover for damage suffered by reason of the burning of plaintiff's dwelling and other buildings, the cause of the fire being attributed to the negligence of an employee of the defendant in spilling a quantity of distillate upon the ground while engaged in filling a drum placed close to plaintiff's house, a complaint charging negligence in general terms, it being alleged that the filling of the drum by defendant's employee was done negligently by him, and caused and contributed to the injury to plaintiff's property, states facts sufficient to constitute a cause of action.

[2] ID.—LIGHTING OF MATCH—KNOWLEDGE OF DANGER—CONTRIBUTORY
NEGLIGENCE.—In this action to recover for damage suffered by
reason of the burning of plaintiff's dwelling and other buildings,
the cause of the fire being attributed to the negligence of an em-
ployee of the defendant in spilling a quantity of distillate upon
the ground while engaged in filling a drum placed close to plain-
tiff's house, in view of his familiarity with distillate and his knowl-
edge that it was volatile, explosive, and highly inflammable, his
proximity to the drum that was being filled, and his knowledge
that distillate was flowing on the ground, the plaintiff, in lighting
his pipe and in throwing the lighted match away, did not act in
the exercise of that due care required of a man of ordinary ex-
perience and sagacity, and the proximate cause of the loss was his
own negligent act.

[3] ID.—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION OF LAW.—When
evidence is conflicting, the question of the contributory negligence
of a plaintiff is one for the jury to determine under proper in-
structions from the court; but where the facts are undisputed, and
the dictates of common prudence point to only one reasonable con-
clusion, the question is then one of law for the court.

APPEAL from a judgment of the Superior Court of
Fresno County. H. Z. Austin, Judge. Reversed.

The facts are stated in the opinion of the court.

Johnston & Jones and Edmund Tauszky for Appellant.

Henry Hawson and M. K. Harris for Respondent.

WASTE, P. J.—The plaintiff brought this action to
recover for damage suffered by reason of the burning
of his dwelling and other buildings, the cause of the fire
being attributed to the negligence of an employee of the
appellant in spilling a quantity of distillate upon the ground
while engaged in filling a fifty-gallon drum placed close
to plaintiff's house. The defendant denied any liability in
the matter, and as a separate defense alleged that the de-
struction of the property was caused by plaintiff's careless-
ness and negligence in lighting a match in proximity to the
inflammable substance, and that plaintiff alone was at fault
in causing the fire. Trial was had by a jury. At the con-
clusion of plaintiff's case defendant moved for a nonsuit,
which was denied. The jury rendered a verdict in favor
of the plaintiff in the sum of $2,283. The appellant moved

for a new trial on the ground that the evidence was insufficient to support the verdict, and that it was against law, and that the court had made errors in the conduct of the trial which were excepted to by the appellant. The motion was denied, and defendant appeals from the judgment.

[1] Appellant's first contention is that the complaint does not state facts sufficient to constitute a cause of action. The negligence was charged in general terms, it being alleged that the filling of the distillate drum by appellant's employee was done negligently by him, and caused and contributed to the injury to plaintiff's property. The demurrer to the complaint was, therefore, properly overruled. (*Hughes* v. *Warman Steel Casting Co.*, 174 Cal. 556, 559, [163 Pac. 885].)

[2] The testimony as to what occurred in connection with the fire which destroyed respondent's buildings is clear, and presents no material conflicts. The appellant regularly supplied customers in the vicinity of Fresno with gasoline and distillate. The respondent, a general contractor and builder, was at the time engaged in farming. He had had fifteen years' experience in the use of gasoline engines and with automobiles. He was familiar with engine distillate and knew that it was volatile, explosive, and highly inflammable. He had three engines on his place, in one of which he was using distillate on the day of the fire. It was supplied from a tank partly buried about ten feet from the engine. A reserve supply of distillate was kept in a drum, placed on a rack about two feet high, situated in a passageway about ten feet wide, between the dwelling-house and tank-house. This space was roofed over but open at the ends. The distillate for the engine running low, the respondent drew out all there was in the reserve drum and replenished the engine tank. Just then the appellant's supply wagon came along, driven by its employee, Thomas. The respondent told Thomas that he had just emptied the reserve drum, and requested him to put thirty-five gallons of distillate in the tank which was feeding the engine, and to put fifty gallons into the reserve drum—"to fill them up." There was some conversation between the two men as to the exact number of gallons the drum would hold, but the fact remains that respondent directed appellant's employee to fill both tanks. Thomas proceeded to fill the

tanks, carrying the distillate from the supply wagon in five-gallon buckets, and pouring the contents into the tanks by means of a large funnel. As he was filling the reserve drum in the passageway the fire occurred. Just how and why it occurred is best told by the most interested witness, the respondent himself. He testified: "He [Thomas] filled up —put the thirty-five gallons in the other tank and then was filling this one, and as he came on with his last gasoline —I didn't know, of course, what had been put in—taking in the last cans, anyway—we walked in together, and I had my pipe in my mouth all the time, and I was just fixing to light it as we walked in with the cans of gasoline, the last he put in the drum, and as he walked in—this drum that he was filling was sitting at the corner of my house, and I walked over deliberately to the tank-house where I struck the match. I struck the match against the tank-house, to light my pipe—had got there on the side of the tank-house, and was holding the match at my pipe like this [indicating] and Mr. Thomas said he had got too much. He said, 'Gee, I have got more now in that than it will hold,' and I turned—I was standing more or less with my back toward him, and as I turned there was a flash of flame. I saw the gas running over and I threw the match away, and a flame came —came all at once. . . . The drum that was being filled was in the sun. A kind of slow breeze was blowing directly from the tank toward me—where I was standing. The distillate had run on the ground quite a bit. . . . It was streaming down on to the ground. . . . There was a flash and then there was quite a number of places caught fire on the ground between me and the tank."

We think little more need be said in reversing the judgment in this case. The respondent was able to get by the demurrer to his complaint because he alleged that the distillate gas was ignited by contact with the flame of a match, lighted by him without knowledge, and in ignorance of the fact that any distillate had been spilled, or was overflowing on the ground. He has proved himself out of court. When he threw the lighted match away he knew the distillate was overflowing the tank and streaming over the ground. He said on the stand that he was from twelve to fifteen feet away. In his complaint he placed the distance at ten feet. Thomas testified he was but six or eight feet away. The

respondent made no investigation when he went into the passageway to ascertain whether any distillate had been spilled in the process of filling the drum. Yet he testified that he knew it would be dangerous to light his pipe if any had overflowed. Aside from the common knowledge of the dangers attendant upon lighting matches near such highly inflammable and volatile substances as distillate, the respondent had the more intimate knowledge and experience already alluded to.

Under all the circumstances of the case we conclude that the respondent in lighting his pipe and in throwing the lighted match away after he was aware that distillate was flowing on the ground did not act in the exercise of that due care required of a man of ordinary experience and sagacity. It was not to be anticipated that such an act would follow the spilling of the distillate. The proximate cause of the loss of the respondent's property was his own negligent act, and he cannot recover for the resulting damage.

[3] When evidence is conflicting the question of the contributory negligence of a plaintiff is one for the jury to determine under proper instructions from the court. But where, as here, the facts are undisputed and the dictates of common prudence point to only one reasonable conclusion, the question is then one of law for the court. (*Catlin* v. *Union Oil Co.*, 31 Cal. App. 597, 609, [161 Pac. 29]; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137, 141, [14 Pac. 518].)

The motion for a nonsuit was erroneously denied. The motion for a new trial should have been granted.

The judgment is reversed.

Richards, J., and Kerrigan, J., concurred.