[Civ. No. 7062. First Appellate District, Division One.—March 21, 1930.]

MYRTLE AYDLOTT, Respondent, v. KEY SYSTEM TRANSIT COMPANY (a Corporation), Appellant.

Brobeck, Phleger & Harrison, Chapman, Trefethen, Richards & Chapman, Chapman, Trefethen & Chapman, Frank S. Richards, and James M. Koford for Appellant.

Donahue, Hynes & Hamlin for Respondent.

THE COURT.—This is an appeal from a judgment upon a verdict in favor of plaintiff and against the defendant for damages for personal injuries alleged to have been sustained by plaintiff when she was run over by one of defendant's trains on January 10, 1927.

The complaint contains three causes of action. The first in substance alleges, that on January 10, 1927, and for some time prior thereto at the intersection of Shattuck Avenue and Blake Street in the city of Berkeley, defendant failed and neglected to pave or fill in the ground between its tracks or to keep the same flush with the surface of the street; that there were depressions and holes alongside the track; that by reason thereof the tracks, street and station were unsafe and dangerous; that on the date mentioned plaintiff walked toward the track for the purpose of taking passage on one of defendant's trains and tripped and fell by putting her foot in a depression and hole so that the wheels of the first car passed over both her legs, mangling and crushing them to such a degree that both had to be amputated.

The second cause of action alleges that by virtue of an ordinance of the city of Berkeley defendant was required to plank, pave or macadamize that portion of the street used by its tracks and between the rails and for two feet on each side thereof, and to keep the same constantly in repair and flush with the official grade of the street, which it failed to do.

The third cause of action alleges that defendant carelessly and negligently operated one of its trains along and upon Shattuck Avenue at its intersection with Blake Street, causing the injuries complained of. Damages were claimed in the sum of $200,000.

Defendant by its answer denied the allegations contained in all the causes of action except the allegation concerning the ordinance and except the fact of an accident, and set up as an affirmative defense contributory negligence on the part of plaintiff.

Trial was had and a verdict in the sum of $75,000 was rendered in favor of plaintiff. It is here claimed that the evidence is insufficient to justify the verdict and judgment. It is further claimed that error in the instructions, prejudicial misconduct of plaintiff's counsel, and the admission and rejection of certain evidence, justify a reversal of the judgment.

The evidence in substance shows that defendant is a public service corporation and in the operation of its business it maintains interurban tracks in the city of Berkeley at the place mentioned in the complaint, over which it operates its trains  At this place no station facilities are maintained by it of any kind or description. Passengers board the cars from and alight upon the public streets. The cars may be boarded from either side. Plaintiff, a young married woman, lived in Berkeley, but was employed in San Francisco as a stenographer. On the morning of the accident she drove with her husband to the train. She alighted from her machine and proceeded in the direction of defendant's tracks. She looked to see if her train was approaching. She noticed it some 200 feet away. The train was traveling at a rate of speed variously estimated at between ten and fifteen miles an hour. In stepping over one of the tracks, so plaintiff testified, her foot caught in a hole adjacent thereto and she was unable to extricate it. As the train continued to approach her, she struggled to release her foot, but was unable to do so; she fell on her side and lost consciousness and was run over by the train. She was taken to a hospital, where both her legs were amputated, one above and the other below the knee.

It was defendant's theory of the case that plaintiff did not catch her foot in a hole between the rails, but was on her feet when she was struck and knocked down by the front end of the train as she negligently stepped upon the tracks without looking. It was the theory of plaintiff, as above indicated, that she caught her foot in a hole in the street and was stretched out on the ground and across the

car tracks, prior to her being hit by the car. Upon this question the evidence is conflicting. Plaintiff is supported in her evidence upon this subject by the testimony of a certain witness and by physical facts inconsistent with defendant's claim that plaintiff was struck and knocked down by the train. A review of all the evidence upon this subject is not necessary, as it is conceded by appellant company that there was evidence on the part of plaintiff to support her theory which justified the trial court in submitting the case to the jury as to just how the unfortunate accident happened, assuming the negligence of the defendant to have been established. That negligence was established there is no question. It was admitted by the pleadings that defendant was obligated by ordinance to maintain the surface of the street adjacent to and between its rails constantly in repair, flush with the official grade and with good crossings. The evidence shows that defendant neglected this duty. Then again there is evidence to show that the engineer failed to observe plaintiff in her perilous position in time to avoid the accident. Appellant does not seriously contend that the evidence upon the subject of negligence is insufficient, but it does contend that the evidence which could be construed as showing negligence on the part of the defendant is so slight that this court will review the conflicting evidence, as the many errors committed by the trial court constitute prejudicial error, resulting in a miscarriage of justice which requires a reversal of the judgment. In this connection it is first claimed that the trial court erred in the giving of several instructions to the jury. All but one of these instructions have to do with the duty of an interurban railroad relative to the safe maintenance of stations or stopping places on its line. The court instructed the jury in substance upon this subject that a railroad, whether steam or urban which maintains stations or regular stopping places along its line, thereby invites the public to patronize the line, and in the exercise of ordinary care, it must afford protection to the public commensurate with the risk involved; that such a company is required to use a greater degree of care at such places for the safety of intending passengers than at other points along its line; that a station in this connection means any point where cars are customarily stopped

to take on passengers and that such passengers, while not absolved from the duty of exercising care for their own safety, have a right to presume that the ground and tracks admit of their getting safely on and off the trains, and they are not necessarily, as a matter of law, negligent in failing to observe a hole. The objection urged against these instructions is that they only apply in steam railroad cases where the station ground and platform belong to and are controlled by the company and have no application where cars are operated on a public street. In *Wilkinson* v. *United Railroads*, 195 Cal. 185 [232 Pac. 131], it is expressly held that there is no reason why the operation of trains with relation to stations should not be the same in both steam and interurban trains; nor should there be any distinction as to the relative degree of care of common carriers and passengers at the stations of a steam railroad and of an interurban train; that the word "station" covers any place where trains usually and ordinarily stop. It is admitted that the place where the accident occurred was a usual stopping place of the train and a higher degree of care was required at such a place in the operation of the train than at other points along the line. It was the duty of defendant to keep the portion of its tracks ordinarily traversed by intending passengers in a safe condition and its franchise required that it do so. The instructions find full support in the Wilkinson case, *supra*. ■ The remaining instruction objected to refers to the elements of damage. The court instructed the jury that in determining the amount of damage it might take into consideration plaintiff's age, sex, condition of life, health and physical condition before as compared with her condition after the accident. It is claimed that by the inclusion of the term "condition of life" the jury was in effect told that they might consider plaintiff's financial condition, for which reason the instruction was improper and prejudicial. This identical instruction was considered in the recent case of *Roher* v. *Leonard & Holt*, 97 Cal. App. 720 [276 Pac. 357] and it was held that it was not necessarily susceptible to the construction here claimed and the giving of the same did not constitute reversible error.

■ Appellant next complains of prejudicial misconduct of plaintiff's counsel during his closing argument to the jury.

In addressing the jury, he stated that plaintiff was prevented from pursuing her occupation as a stenographer; that she had been assisting her husband in providing a home for them which the accident had compelled them to abandon and move to a house over a garage. These facts were in evidence and counsel had a right to refer to them in his argument. ■ Counsel also referred to defendant as the "company of sinking ferryboats and leaky cars" and stated that it was seeking higher rates for transportation of its passengers. Reference was also made to the likelihood of plaintiff becoming a public charge by reason of the nature of her injuries. There is no question but that these remarks were highly improper and should not have been made. ■ While great latitude is allowed in appealing to the sympathies of the jury, attorneys should conduct themselves so as to prevent the exhibition of inordinate zeal which often leads to prejudicial error. Remarks addressed to a jury tending to excite their prejudice or passions or to cause resentment, or unjustly enlist their sympathies in favor of their client or against the cause of his adversary, are always improper and should be avoided. ■ The remarks in question were not assigned as misconduct at the time they were made, nor was the court requested to instruct the jury to disregard any of them. As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect. It is only the most extreme case where an instruction to the jury, if given, would not remove the effect of improper remarks. (*Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, 23 [89 Pac. 1097]; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 26 [204 Pac. 393]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 368 [12 A. L. R. 1007, 184 Pac. 672].) ■ A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection on appeal. ■ Moreover, appellant presented this mat-

ter to the trial court in support of its motion for a new trial. The motion was denied. A trial judge is in a better position than an appellate court to determine whether a verdict is probably due wholly or in part to misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong. (*Lafargue* v. *United Railroads,* 183 Cal. 720 [192 Pac. 538].)

█ Finally, appellant assigns as error the rejection of certain evidence. Defendant sought by one of its witnesses to prove the manner in which the accident happened. The question was objected to as leading and the objection to the same was properly sustained. However, the witness subsequently testified fully upon this subject. █ Complaint is also made of the ruling of the court sustaining an objection to a question directed to the engineer of the train as to whether he did all that he could to stop the train in order to avoid the accident. An objection to the question was sustained on the ground that it called for a conclusion of the witness. Whether properly sustained or not is of no consequence, as the witness thereafter fully testified upon this subject.

█ In conclusion it may be said that after an examination of the entire cause we cannot say that the misconduct of plaintiff's counsel above referred to, resulted in a miscarriage of justice. The unfortunate injury which plaintiff has suffered is of such a serious character that it demanded a substantial verdict where negligence on the part of defendant existed. The amount, though large, is not claimed by defendant to be excessive, and it does not indicate that it was obtained through the misconduct complained of.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 19, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1930.