[Civ. No. 4712. Third Appellate District.—January 19, 1933.]

W. W. HARRISON, Respondent, v. C. B. HARTER, Appellant.

WALLACE R. HARRISON, a Minor, etc., Respondent, v. C. B. HARTER, Appellant.

William V. Cowan, M. J. Cheatham, Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

L. C. Smith and Fred C. Pugh for Respondents.

PLUMMER, J.—The above-named cases were consolidated for trial and are presented upon this appeal on one transcript. The appeal in both cases is from the judgment entered in favor of the respective plaintiffs.

The record shows that on or about the seventh day of April, 1931, the plaintiffs were operating a Ford truck, driving northerly on the state highway in the county of Tehama; that the defendant was driving a Buick automobile in a southerly direction on the same highway. At about the hour of 7:45 P. M. a collision occurred between the two automobiles, in which the plaintiffs suffered damages; the plaintiff W. W. Harrison suffered injuries not of an essentially serious nature while the plaintiff W. R. Harrison suffered injuries of an extremely serious and probably permanent nature.

The paved highway at the point of the collision is 15 feet in width, with shoulders on each side giving some additional driving space. At the time of the collision the Ford was equipped with two headlights, one tail-light and two clearance lights. The clearance lights were located on the extreme outer corners on the left side of the truck, one in front and one in the rear. The front clearance light was

bluish-green; the rear clearance light was red. The outside measurement of the truck-bed was 96 inches. The truck was equipped with a flat bed which extended from the driver's cab to the rear. Between the driver's cab and the exterior portion of the truck-bed there was built up a little nook or recess in which the plaintiffs were carrying, preceding and at the time of the collision, a 5-gallon can of gasoline containing about 3½ gallons. This can was securely fastened against the driver's cab so that it could not become loose. There were about 6 inches between the outside of the can and the line of the front edge of the truck-bed. Just preceding and at the time of the collision the truck was traveling in a northerly direction, with the right front and rear wheels off the pavement and over on the shoulders to the extent of about 2 feet.

There is sufficient testimony in the record to support the conclusion that just preceding and at the time of the collision the appellant was driving his Buick automobile in a southerly direction and occupying about two-thirds of the paved portion of the highway. There is some testimony that the appellant was driving his automobile at a speed of 60 miles per hour. The appellant's own testimony is to the effect that before he reached the town of Red Bluff, which is some little distance north of the place of collision, he had been driving his car at a speed of between 60 and 65 miles per hour, but that after passing through the town of Red Bluff, on his course southerly, he had slackened his speed to some 30 or 35 miles per hour. The left front wheel of the Buick automobile struck the left front side of the Ford. The force of the collision caused the can of gasoline to explode, or by some means become ignited, and the burning gasoline was thrown over the persons of the plaintiffs, injuring the plaintiff W. W. Harrison to some extent and, as we have said, seriously injuring the plaintiff W. R. Harrison.

After the collision the Buick car proceeded on its course, veering to the left, and stopped only when it came in contact with a fence along the northerly side of the highway, at a distance of 197 feet from the point of collision. The force with which the Buick car struck this fence was sufficient to jerk three posts from the ground which had been firmly set, and also to tear loose the wires from several

other posts. The Ford truck stopped at a point 61 feet from the collision. The photographs introduced in evidence show the left front wheel of the Buick automobile was completely demolished, and the fact that the Buick car traveled 197 feet after the collision, with one front wheel gone, and still had a striking force when it reached the fence sufficient to tear out three theretofore firmly set posts, gave the jury sufficient grounds to reach the conclusion that the defendant had not materially slackened the speed at which he was traveling after passing through the town of Red Bluff.

Upon this appeal it is not contended that the record does not amply support the conclusion that the collision occurred by reason of the defendant's negligence. Without questioning this fact four grounds of reversal are presented: 1. That the plaintiffs were guilty of contributory negligence, as a matter of law, in keeping and transporting gasoline on the exterior of their truck, and are thereby barred from recovery; 2. Plaintiff's counsel was guilty of prejudicial misconduct, whereby appellant was denied a fair trial; 3. The damage awarded to the plaintiff Wallace R. Harrison, in the sum of $23,000, was excessive as a matter of law; 4. The court erred in instructing the jury that the defense of contributory negligence failed, unless the defendant and appellant proved that such negligence was the proximate cause of the injuries.

While the appellant bases his first contention on the fact that the plaintiffs were guilty of contributory negligence in transporting gasoline on the exterior of their truck, an examination of the record discloses that the gasoline was not carried on the exterior portion of the truck. It was not upon the running-board beside the cab, nor was it carried at a location outside of any exterior portion of the truck. This eliminates all questions as to the carrying of the gasoline in an exposed location.

The record shows that the Buick automobile collided with the side of the truck, tearing away the rear left wheel thereof. In addition to the can containing 3½ gallons of gasoline, there was upon the truck-bed an empty gasoline tank, tools, mattress and other articles not necessary to mention. The 3½ gallons of gasoline appear to have been carried as an auxiliary fuel supply. Upon this record we

are asked to hold that the plaintiffs were guilty of contributory negligence as a matter of law, barring recovery.

As stated by the trial court in its instructions to the jury there is no statute prohibiting the carrying of a can of gasoline as an extra fuel supply upon a truck, nor have we been cited to any case, nor has our search of the authorities disclosed any case where the carrying of gasoline, as was done in the instant case, constituted negligence as a matter of law. Common experience, of which we must take knowledge, teaches us that practically every automobile uses gasoline as a propelling power. This gasoline is carried in the tanks. On some automobiles the tank is in the rear; on some, the tank is underneath the driver's seat; and on others, it is under the cowl in front of the driver; and the fact that fires follow automobile collisions, and the occupants in many instances burned to death, is brought to our attention with extreme frequency. ▮ Time and again courts have reiterated the statement that gasoline is a highly inflammable substance, of which every person is charged with knowledge, but its use has become such an essential element in the industrial world, and in transportation activities, that the mere presence of gasoline without any other attending circumstances, precludes holding its carrying on the highway, contributory negligence as a matter of law. Whether an ordinary gasoline tank on an automobile would explode when struck by another automobile traveling at the rate of 60 miles an hour is not touched upon in the transcript, and all that we can conclude is that gasoline will explode when the container in which it is carried is struck by a sufficient force.

None of the cases cited by appellant to support its contention that the carrying of a can of gasoline in this instance amounted to contributory negligence deal with collisions.

In the case of *Feeney* v. *Standard Oil Co.,* 58 Cal. App. 387 [209 Pac. 85], the record shows that a deliveryman, in delivering gasoline at a filling-station, spilled considerable of the liquid adjoining the container being filled, and did not take any steps to remove the spilled gasoline, and in a few minutes after having spilled the gasoline, threw a lighted match down upon the floor where the gasoline had been spilled. A fire followed, burning the filling-station. Under

such circumstances the act of the agent of the defendant was held negligent. The evidence in that case did not disclose that the plaintiff was aware of the fact that the gasoline had been spilled, but the court held that such knowledge on the part of the plaintiff did not remove the duty of the defendant's agent to remove the same, nor excuse him from throwing a lighted match on the floor of the garage. Knowledge of the inflammable nature of the gasoline was held known by the deliveryman, as a matter of law.

In the case of *Smith* v. *Associated Oil Co.*, 53 Cal. App. 142 [199 Pac. 879], relied upon by appellant, the facts are so dissimilar as to furnish no precedent for a ruling herein. In the Smith case an employee of the Associated Oil Company, in filling a tank close to the plaintiff's dwelling, with distillate, permitted a quantity of the fluid to overflow the tank and spread out upon the ground. The plaintiff, familiar with distillate and knowing that it was volatile, explosive and highly inflammable, proceeded to light his pipe with a match, and in throwing the lighted match away, set fire to the distillate, following which his dwelling-house was consumed. The court held that under such circumstances the plaintiff was not entitled to recover damages. His own act of negligence in lighting his pipe and throwing the lighted match on the ground so as to come in contact with the distillate was the proximate cause of the fire.

In *Standard Oil Co.* v. *Evans,* 154 Miss. 475 [122 South. 735], where the employee at a filling-station overflowed the gasoline tank of a customer he was serving, and failed to wipe up the gasoline, the overflowing gasoline came in contact with a heated portion of the automobile, caught fire and produced the damages sought to be recovered in the action. The court held that gasoline was inflammable, and the attendant at the filling-station was chargeable with knowledge thereof, and his failure to wipe up the spilled gasoline was held negligence, and constituted a basis for recovery of damages.

In *Fredericks* v. *Atlantic Refining Co.*, 282 Pa. 8 [127 Atl. 615, 617, 38 A. L. R. 666], the Supreme Court of Pennsylvania decided that one handling gasoline in close proximity to an acetylene light was guilty of negligence. In that case, however, the court did use language which is

applicable to the circumstances presented in the case under consideration, and supports the judgment assailed in this action. In the Fredericks case the court said: ''Plaintiff assumed only the usual and ordinary risks, and not the risks which became extraordinary through negligence. It does not lie in the mouth of one at fault to complain of another's lack of care, when the care in question is made necessary only because of the former's wrongful act and would not be needed under ordinary circumstances. Plaintiff cannot be charged with negligence simply because he failed to anticipate negligence on the part of another, which resulted in injury. (Citing *Oil City Fuel Supply Co.* v. *Boundy*, 122 Pa. 449 [15 Atl. 865] ; *Wagner* v. *P. R. T. Co.*, 252 Pa. 354 [97 Atl. 471].)'' Thus, applied to the present case, the plaintiffs cannot be charged with negligence simply because they failed to anticipate that the defendant would come down the highway at an excessive rate of speed, fail to keep his automobile on the right-hand side of the highway, and come into collision with the truck upon which they were carrying a small quantity of gasoline. It cannot be held, if the Pennsylvania case is followed, that the plaintiffs were guilty of negligence in carrying the can of gasoline, where no injury or evil results would have followed, save and except through the violation of the California Vehicle Law, by someone who chanced to be driving in an opposite direction.

In *Gust* v. *Muskegon Co-op. Oil Co.*, 226 Mich. 532 [198 N. W. 175, 33 A. L. R. 772], the Supreme Court of Michigan held that one holding a lighted lantern near spilled gasoline, which was thereby ignited, was thereby guilty of contributory negligence, on the ground of the known inflammability of the fluid. Though cited as an authority by the appellant, we find no similarity of conditions between that case and the facts presented upon this appeal.

■ That a higher degree of care must be exercised in handling a dangerous agency than is required in other instances does not charge one with contributory negligence as a matter of law, simply because the substance handled or dealt with is of an inflammable or explosive character. The law simply requires that degree of care which the substance handled requires in order to protect life and property. It

does not mean that the one who has such substance in charge is without remedy if another negligently, carelessly and in violation of law produces the injury. It is true that in the present instance, without the gasoline, there would have been no fire, but without the collision there would have been no fire, regardless of where the gasoline was carried. In other words, it was not the carrying of the gasoline that caused the trouble; it was the collision following the reckless driving of the appellant. If this is not true, then in the instances which we have heretofore cited of cars being upset by collisions followed by fire and the burning of the inmates of the overturned car, the injured would likewise be without remedy, on the assumption that it was the fire that caused the injury to the inmates of the car and not the collision which overturned the car. ██ The reasonable rule we hold to be that the one who negligently institutes the cause which in continuous sequence results in the ultimate injury, is liable for whatever damages ensue. Section 14 of the act of the legislature, No. 2432, California General Laws of 1931, relates only to the carrying of explosives, etc., on vehicles carrying passengers for hire, and has no application here.

In *Grimes* v. *Richfield Oil Co.*, 106 Cal. App. 416 [289 Pac. 245, 251], the court definitely answers the contention of the appellant herein, that the plaintiff should have anticipated the negligence of the defendant. It is there said: "It is the rule in California that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only by violation of law or duty by such other person, provided, of course, that such person himself use reasonable care to observe the conduct of the other person so far as such conduct may affect his own safety at the time. (*Harris* v. *Johnson*, 174 Cal. 55 [161 Pac. 1155, Ann. Cas. 1918E, 560, L. R. A. 1917C, 477]; *Swartz* v. *Faddershon*, 92 Cal. App. 285 [268 Pac. 430]; *Barton* v. *Studebaker Corp. of America*, 46 Cal. App. 707 [189 Pac. 1025]; *McPherson* v. *Walling*, 58 Cal. App. 563 [209 Pac. 209].) The appellant, in the instant case, concedes that the respondent was driving at a lawful rate of speed, that his brakes were in good

working condition and that his lights complied, in every respect, with the provisions of the California Vehicle Act.''

Appellant's first assignment of error must be held as not well taken.

The second assignment of error set forth in the appellant's brief is based upon the prejudicial conduct of counsel for the plaintiffs. The conduct complained of resulted when one of the witnesses for the defendant made some derogatory remark concerning plaintiff's counsel, and which related to a controversy which apparently took place between the witness, who was the proprietor of a hospital wherein Wallace R. Harrison was placed and kept for a number of weeks, and the parents of Wallace R. Harrison, who desired to remove their minor son therefrom. A reading of the transcript discloses that the appellant permitted practically all the controversy between the witness and counsel to go into the record without making any objection thereto, and that whenever any objection was made by counsel for the appellant the trial court sustained the same. The conduct of counsel for the plaintiffs was not assigned as error or as prejudicial at the time of its occurrence, nor did the appellant ask that the court direct the jury to disregard the same, but apparently sat acquiescent and failed to tender the issue of such conduct to the trial court.

We have carefully read all that portion of the transcript presented to the trial court upon motion for new trial, and fail to find that such issue was there presented for determination. The motion for new trial does not tender the question of misconduct of counsel. These are the questions presented: That the evidence is insufficient to justify the verdict, and that it is against the law; errors in law which occurred at the trial of said cases, and were excepted to by defendants; misconduct of the jury; newly discovered evidence material to the defendant which could not, with reasonable diligence, have been discovered and produced at the trial; and finally, excessive damages.

No attempt was made to set forth an assignment by which the trial court would have had its attention directed to subdivision 1 of section 657 of the Code of Civil Procedure, concerning irregularities of the adverse party preventing the appellant from having a fair trial. Misconduct of the jury is separate and distinct from misconduct of counsel.

We have likewise read the argument in behalf of the appellant upon his motion for new trial, as made to the trial court, and fail to find any reference whatever to any alleged misconduct.

Under such a state of the record it has been held many times that an appellant cannot raise such issue for the first time upon appeal unless in those rare instances where the misconduct is of such a grave character as not to be susceptible of remedy in the trial court.

In *Aydlott* v. *Key System Transit Co.*, 104 Cal. App. 621 [286 Pac. 456, 459], we find language which we think controlling here, as follows: ''The remarks in question were not assigned as misconduct at the time they were made, nor was the court requested to instruct the jury to disregard any of them. As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act is reviewed upon appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to act in the premises, if possible, so as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect. It is only the most extreme case where an instruction to the jury, if given, would not remove the effect of improper remarks. (*Tingley* v. *Times Mirror Co.*, 151 Cal. 1, 23 [89 Pac. 1097]; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 26 [204 Pac. 393]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 368 [184 Pac. 672, 12 A. L. R. 1007].) A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection on appeal. Moreover, appellant presented this matter to the trial court in support of its motion for a new trial. The motion was denied. A trial judge is in a better position than an appellate court to determine whether a verdict is probably due wholly or in part to misconduct of counsel, and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720 [192 Pac. 538].)''

In *Loggie* v. *Interstate Transit Co.*, 108 Cal. App. 165 [291 Pac. 618], this court held that the granting of a new

trial on account of misconduct of counsel was largely within the discretion of the trial court, and would not be interfered with upon appeal.

The authorities cited in the opinion in the Aydlott case sufficiently support the rule which we have stated, and obviate further citations.

Not having called the attention of the trial court to any irregularities of counsel during the trial of the case, not having asked for any instructions to the jury relative thereto, and not having tendered such issue upon motion for a new trial, we deem it too late to raise such issue upon appeal. As stated in one of the cases cited, a party cannot sit idly by, take no steps to protect his alleged rights, depend upon chances of victory, and then complain for the first time upon appeal if the decision is adverse.

■ Are the damages awarded Wallace R. Harrison excessive? A short *résumé* of the testimony answers this issue. The entire body of the boy was burned, two-thirds were described as "third degree" burns; the hair was burned from his head; his hands were burned to such an extent that the flesh fell from the bones, and his finger nails dropped from his fingers; the muscles, cords, nerves and blood vessels in both legs were impaired to a great extent; his left leg was burned until there is now a total loss of its use. This, many months after the injury. The burns forming scar tissue, causing the left leg to draw towards the thigh to the extent that he can only put his big toe to the ground. A fifty per cent loss has followed the use and strength of his left hand, together with the partial loss of his right hand and arm; the burns permanently destroyed two-thirds of the perspiratory glands, the function of those glands being to expel the poisons of the body, thus warding off disease; his heart action is said to be dangerously increased; his heart is enlarged at the apex; a murmur or defective valve has developed, which is known as the "mitral" valve. These defects are permanent and have a tendency to become worse; his ability to perform physical labor is permanently destroyed; there is a running sore on the left leg which cannot be healed; the scar tissue destroyed on the burned area of his body will continue to contract and grow worse, particularly on his left leg; his kidneys are affected from the pus that developed in the burned tissues

of his body; the physical injuries have impaired his mental ability; he can only get around by the use of crutches; changes in climatic conditions cause him constant suffering. At the time of his injury Wallace R. Harrison was seventeen years of age, in robust health, and in all respects a normal boy.

While there is some conflict in the testimony as to what we have just stated, there is ample evidence in the transcript to justify the conclusion of the jury that the injuries which we have scheduled were all suffered by the plaintiff Wallace R. Harrison.

As no reasonable person would suffer the injuries which we have set forth for the sum of $23,000, we cannot hold that the jury was actuated by either prejudice or passion.

██ It is finally urged that the court committed prejudicial error in its instructions to the jury. At the request of the plaintiffs the court gave the following instructions:

"You are further instructed, in connection with the other instructions, that in pleading contributory negligence, the burden is on the defendant to prove two things: First, that the plaintiffs were negligent; that such negligence was the proximate cause of the injuries complained of. If they fail to prove either of these two things, this entire defense fails."

The court likewise told the jury that there is no statute prohibiting the transportation of gasoline on trucks. The instruction which we have set forth is not technically correct. If the acts of the plaintiffs contributed to their injury, and were a negligent contributing cause at and coincident with the negligence of the defendant, then of course no recovery could be had. But if, as we have shown, the mere carrying of gasoline under the circumstances disclosed in this case was not the cause of the accident, the instruction complained of could not possibily have worked any injury to the appellant. The court, however, did give the following instruction, which was all that the appellant could ask in this case: "Before you can determine whether ordinary care was used or not, you must first determine the facts and what were the circumstances and conditions surrounding the collision and injuries alleged. If, however, you find from the evidence in this case, guided by the instructions, that plaintiffs did not use ordinary care in the three par-

ticulars specified by the defendant, or in any one of them, to-wit: transportation of inflammable gasoline upon the truck, in the manner alleged, or failing to drive upon the right-hand side of the highway, but over and along the middle of the highway, as alleged, or failing to carry lights upon said truck on the extreme left-hand side thereof, as alleged, and if . . . you find also that such acts or omissions on their part, or any of them, contributed proximately to the collision or injuries complained of, if any, you may determine these acts and omissions, or acts or omissions so found by you to be contributory negligence on the part of the plaintiffs, and if you do so determine that contributory negligence is established in this case . . . your verdict should be for the defendant. You are instructed that the burden of establishing the defense of contributory negligence by a preponderance of the evidence is upon the defendant, unless the same is proven or can be inferred from the evidence of the plaintiffs.''

With the unquestioned fact upon this appeal that the collision was caused by the negligent driving of the defendant, it is inconceivable as to how the jury could be influenced prejudicially by any technical error in the use of the articles ''a'' or ''the'' in an instruction; or as to how the incorrect use of the words ''contributory'' or ''proximately'' resulted in any prejudicial disadvantage to the appellant.

The appellant, in concluding his brief, again asserts that there was evidence before the jury that the can in which the gasoline was transported by the plaintiffs extended beyond the line of the hub-caps on the left side of the truck. Neither the testimony nor the photographs submitted for our inspection appear to support this claim. There is no question, however, that the truck-bed which we have described extended a number of inches beyond the exterior line of the gasoline can.

The judgments are affirmed.

Thompson (R. L), J., and Pullen, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 18, 1933, and an application by appellant to have the cause heard in the

Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1933.