[Civ. No. 16694.   First Dist., Div. Two.   Mar. 19, 1956.]

W. DAN MORGAN et al., Appellants, v. G & N TANK
TRUCKING COMPANY (a Copartnership), Respondent.

H. Sherwood Craig for Appellants.

McGilvray, McGilvray & Cameron and Daniel M. Cameron for Respondent.

DEVINE, J. pro tem.*—The appellants in this cause are the plaintiffs, against whom judgment was rendered by the trial judge sitting without a jury. Plaintiffs were the owners of a tractor and trailer oil tank, which they rented to defendant, a copartnership, for the purpose of storing road oil needed on a construction job near Hayfork, California. The road construction was being done by N. W. Ball and Sons, a corporation or copartnership, but respondent performed two functions in connection with it, namely, storing of oil in the rented tank trailer, and doing part of the work of spreading the oil on the road.

When the tank arrived at the construction site, a retort was attached to it. The retort was furnished by a third company, H. B. Folsom Company, and that company also did some of the work of spreading oil. There is no evidence as to the identity of those who did the work of connecting the retort with the tank, except the negative testimony of the office manager, the foreman of N. M. Ball and Sons, that employees of their company did not do that work.

The purpose of the retort was to heat the oil to a temperature necessary for its being spread on the road. The operation of withdrawing the oil from the tank, heating it and spreading it on the road went on for some days without incident; but on October 11, 1949, a fire commenced about the retort and completely destroyed plaintiffs' tractor and tank trailer.

At this point it is convenient to interrupt the narration of the facts and to describe the history of the cause, the pleadings and the findings. The complaint was filed against respondent, and against N. M. Ball and Sons and H. B. Folsom Company. The action was dismissed as to the last two; the record before us does not show the reason, but that

---

*Assigned by Chairman of Judicial Council.

is immaterial. The complaint alleges the leasing of the truck, the fact that H. B. Folsom Company attached the retort to the tank, negligence of defendants in connecting and in operating the retort, and that such negligence was a proximate cause of the loss. It goes on to state that plaintiffs are uncertain as to the persons from whom they are entitled to redress, wherefore they have joined the three parties defendant.

The court's essential findings are that it is not true that the connecting of the retort to the tank or the operation of the retort was done by employees of defendant and that it is not true that negligence of defendant caused the loss.

In the complaint, it is also alleged that no fire protection had been provided around the site, and some mention of that subject is made in appellants' brief; but there was no allegation in the complaint as to duty to provide such protection, and no allegation that such lack of protection was a proximate cause of the loss. Had there been such allegations, these matters no doubt would have been the subject of ample inquiry before the trial court, but as they were not pleaded, the trial was not concerned with them, even though some reference to the general subject was made in the evidence.

The points made by appellants in their brief are: 1, that they made out a case under the doctrine res ipsa loquitur which defendant failed to rebut, 2, that there was evidence of oil on the ground under the retort before the fire, and that the failure to remove or cover the oil was negligence *per se,* and 3, that defendant as a bailee had the burden of showing that the loss was not caused by its negligence, and that it failed to carry that burden.

The recital of the facts is resumed at this point, and is broken into two categories: facts relating to cause of the fire, and facts relating to the personnel on the job.

The facts known about the fire are few. Floyd Anderson, foreman for N. M. Ball and Sons, testified that he saw a man named Essex, an employee of his company, not of defendant, operating the retort, and that he, Anderson, turned off the fuel supply on the retort because it did not seem "like it was circulating right." The fire in the retort was completely extinguished. Anderson told Essex not to light it again, and then Anderson drove away. He had gone about a mile, when he noticed the fire. He returned at once. Essex was still there, and others were at hand.

Prior to the fire, Anderson saw some oil on the ground, but not any more than "what is generally always—that happens to run down." Edwin J. Collins, an office manager for N. M. Ball and Sons, saw Essex operating the retort, and a little later, saw the fire burning the retort and the ground adjacent to it. Collins testified that "there was oil around that area," that is, the area around the tank and the retort, before the fire, though he did not tell the quantity. He testified that "the fire, as I saw, was the black, oily substance."

The facts relating to the employment of those operating the retort are these: John Newman, one of the partners of the G & N Tank Trucking Company, respondent, testified that his men did not operate the retort, and there is no testimony from any witness that any employee of respondent did so. Edwin J. Collins, called by plaintiffs, testified that the superintendent, Irving, directed "our people," that is, employees of N. M. Ball and Sons to watch the retort. There is testimony given by Anderson, the N. M. Ball and Sons foreman, that when the retort was first started, it was operated by the men who were spreading the oil, and appellants argue that these were either defendant's own employees or those of the Folsom Company, who, say appellants, are also employees of defendant because they were doing work for it. This does not follow, for from all that appears, the Folsom Company was an independent contractor whose contract, it would appear, at least as probably as otherwise, was not with defendant, but with the general contractor, N. M. Ball and Sons. In any case, the testimony of Anderson related to the early operation of the retort. Just before the fire, the retort was being operated by Essex, as appears from the testimony of the witnesses Anderson and Collins.

As to Essex, the N. M. Ball and Sons employee, it was testified by Anderson that Essex took orders from Irving, the superintendent of that company. Essex did not appear as a witness. Appellants state in their brief that Essex was present in court, at respondent's request, and argues that respondent's failure to call him as a witness militates against respondent. There is no evidence in the record that Essex was in court, and respondent denies that he was. We must, of course, give no consideration to appellants' assertion which is unsupported by the record.

It was testified by the witness Collins that it is an unwritten law of the construction business that, in order to

get the job done, if one contractor needs help or gets behind in his work, another will lend his employees to help him out, and that the superintendent on this job, an N. M. Ball and Sons employee, was one who would do anything reasonable to get the job done, and did direct his own men to watch the retort while "the other two men (presumably, but not certainly, defendant's employees) were out spreading oil. The exact arrangements made, what instructions were given, by whom, and how they were carried out, are subjects which were not covered. Mr. Irving, who was closest to all those matters, died before the trial and had not testified by deposition.

█ Considering the doctrine of res ipsa loquitur, we address ourselves to the subject of control of the instrumentality in question. That instrumentality is the retort and its connections with the tank. For the doctrine to apply, it is necessary that the instrumentality be in what is called "exclusive control" of the defendant.

Of course, the exclusive control may be that of the employees of a defendant. That defendant's employees did not, in this case, exclusively control the retort and its connections, is manifest. The man last seen operating it, shortly before the fire, was an employee, not of defendant, but of N. M. Ball and Sons, and it was the foreman of that company who shut off the operation.

If we consider the facts in the light of the rule that it is the right of control of the instrumentality, rather than actual control, which determines the applicability of res ipsa loquitur (*Metz* v. *Southern Pac. Co.*, 51 Cal.App.2d 260 [124 P.2d 670] ; *Ybarra* v. *Spangard*, 25 Cal.2d 486, 493 [154 P.2d 687, 162 A.L.R. 1258]), still there is nothing to show that such right of control belonged to defendant. The retort was not rented to defendant, but to the Folsom Company. The witness Newman, one of the partners of the defendant partnership, testified that the retort was never operated by defendant's employees. Collins, a witness called by plaintiffs, testified that Essex, who was operating the retort just before the fire, took orders from Irving, general supervisor of N. M. Ball and Sons, and in the arrangements for the rental, Newman of the defendant partnership told Morgan that Irving would be the sole operator of the retort.

The doctrine of res ipsa loquitur does not apply, if otherwise it would, because of lack of control and of the right of control, by defendant.

·

Plaintiffs' next proposition is that no inference could be drawn except that of negligence because, they say, dangerous material was allowed to remain on the road under the retort. Here, again, proof of duty on the part of defendant as distinguished from other parties, to keep the road free of oil, is absent. Besides, the cases on which they rely, *Feeney* v. *Standard Oil Co.*, 58 Cal.App. 587 [209 P. 85], and *Harrison* v. *Harter*, 129 Cal.App. 22 [18 P.2d 436], have to do with gasoline, which is subject to the rules governing explosives. In this case, there was testimony that the gasoline storage was far removed from the site of the fire, and that the gasoline was not ignited. What the burning quality of the oil was, except that it was inflammable, we do not know. Not a word about its flash point was produced. We do know that the fire about the equipment burned three or four hours, which would indicate that the oil was not an explosive.

Finally, appellants contend that, there having been a mutual benefit bailment, the burden of proving that the equipment was not lost by negligence rests on defendant. This proposition would go beyond plaintiffs' first proposition in which negligence based on the doctrine res ipsa loquitur was relied upon, for, although a prima facie case made out under that doctrine must be met by at least equal evidence on the part of the defense (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041]), the defendant in such a case is not required to prove freedom from negligence by preponderance of the evidence. (*Williams* v. *City of Long Beach*, 42 Cal.2d 716 [268 P.2d 1061].)

Respondent replies that the cause was based on the theory of negligence, not of contract as shown by the complaint. It has been held, however, that the burden of proof of freedom from negligence is on the defendant in a mutual benefit bailment case, whether plaintiff frames his complaint on negligence or on a breach of warranty theory. (*Downey* v. *Martin Aircraft Service*, 96 Cal.App.2d 94, 98 [214 P.2d 581].)

There was ample evidence upon which the court could base its finding that defendant had not failed to exercise ordinary care, even considering the burden of proof to have rested on the defense. The management of the retort, it may fairly be inferred from all the evidence, was placed in Irving, a man in whom one of the plaintiffs had expressed confidence, who was employed by N. M. Ball and Sons. It may reason-

ably be inferred, too, that whatever caused the fire was an act or omission of the N. M. Ball and Sons employees who operated and controlled it at least in the time immediately prior to the fire.

The judgment is affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.