[Civ. No. 20522. First Dist., Div. Two. Mar. 20, 1963.]

CITY OF OAKLAND, Plaintiff and Respondent, v. CLARA
F. PARTRIDGE, Defendant and Appellant.

Francis T. Cornish for Defendant and Appellant.

Hilton J. Melby, City Attorney, and Mark B. Shragge, Deputy City Attorney for Plaintiff and Respondent.

AGEE, J.—Defendant-owner appeals from a judgment in condemnation which fixed the value of the subject property at $68,535. The only points raised on appeal relate to the amount of the award, the defendant contending that it would have been higher had not certain errors occurred during the trial.

The property consists of a three-story frame building located on the southwest corner of 14th Street and 42nd Avenue, in the City of Oakland. The street level is divided into four store sites and the upper two stories are divided into 14 apartments and two sleeping rooms. The building was 65 years old. Plaintiff-city acquired the property for the purpose of street widening.

The summons was issued herein on April 7, 1961, and the value of the property was fixed as of that date. (Code Civ. Proc., § 1249.) Trial by jury commenced on June 15, 1961.

 *Jury view of the premises.* This occurred on June 20, 1961, by court order and under the court's supervision. Defendant complains that the trial court abused its discretion in allowing such a view because the furniture and furnishings had been moved out shortly after April 18, 1961, and the building was not in the same condition at the time of the jury's visit as it was on April 7, 1961.

Plaintiff's motion to view the premises was made on June 16, 1961, outside of the presence of the jury. Defendant's counsel objected on the following ground: "I feel it [the building] has been altered in a sense to give it a discolored appearance as compared to what it was at the time of the condemnation, as well as the fact that I can't visualize how a jury is going to be able to see the income value of this property when it is unoccupied and without furniture in it. Therefore, I would oppose said motion."

Plaintiff then called as it witness, Howard W. Kerr, a representative of the Urban Renewal Department of the City of Oakland. He testified that he had viewed the premises on April 18, 1961, and again on June 16, 1961. In response to a question as to whether there had been any change in the condition of the property "since the date that you saw it while it was being occupied and this morning," he stated: "No, the main changes of course are the removing of all of

the furnishings of the tenants themselves and, I suppose, of the owner. There—some rooms and the halls and the stairways where they have removed rugs. The only damage to the building, I would say, was in three or four cases where doors had been locked and they had been broken into, I think to gain access because I know that there was a time there when none of us could get into any of the units because no one had keys. There was one window that was broken at the back door.''

An Oakland police sergeant testified that, for security reasons, he had recommended that the plate glass windows on the floor level be boarded up, that the front doors be secured, that the back yard area be provided with a gate and padlock, and that the rear entrance door be padlocked. These things were done.

After this testimony was given, defendant's counsel was asked if he had any testimony to present in support of his objection and he replied that he did not. The court thereupon announced that its ruling would be deferred until some of the testimony had been heard. On the third day of trial, the motion was granted with the condition that both sides could put on any evidence as to any change in the property since April 7, 1961, or could stipulate to any such changes. Counsel thereupon stipulated that all of the furniture and furnishings had been removed and that the security measures recommended by the police had been taken. None of the foregoing proceedings relating to changes took place in the presence of the jury.

Prior to the jury and court viewing the property, the court gave detailed instructions to the jury as to how they were to conduct themselves on the trip. No mention was made of the changes stipulated to by counsel. However, after giving these instructions, the court asked counsel if they could think of anything further and both replied that they could not.

Section 610 of the Code of Civil Procedure provides that ''[w]hen, in the opinion of the court, it is proper for the jury to have a view of the property which is the subject of litigation, . . . it may order them to be conducted, in a body, under the charge of an officer, to the place, . . .'' Defendant admits that ''viewing the premises in a condemnation case is within the sole discretion of the Court,'' citing *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 501 [225 P.2d 497].

As a part of the charge to the jury, the court instructed

as follows: "In reaching your verdict as to the value of the property taken by the condemner, that is, the City of Oakland, you should disregard any changes in the property involved herein or in the neighborhood after this action was commenced on April 7, 1961."

It is our opinion that the jury must have seen and recognized the changes that had occurred during the prior two and one-half months. The following excerpt from the opinion in *City of Riverside* v. *Kraft* (1962) 203 Cal.App.2d 300, 302 [21 Cal.Rptr. 425], is directly in point: "The lengthy testimony, photographs and other evidence clearly delineated the condition of the premises on May 23, 1960, and we are unable to perceive how the jury could have reasonably suffered any misapprehension as to the facts or law." (In referring to the "testimony" in the above quote, we intended, in the instant case, to mean the testimony taken in the presence of the jury.)

Defendant cites *People* ex rel. *Dept. of Public Works* v. *Logan* (1961) 198 Cal.App.2d 581, 590 [17 Cal.Rptr. 674]. In that case the trial court denied plaintiff's motion for a jury view. This was held not to be an abuse of discretion, the appellate court pointing out that, at the time of the trial, the construction work was in progress, a fence had been removed, and scrapers were constructing a fill immediately in front of the property.

Conversely, under the situation as it existed in the instant case, we find no abuse of discretion by the trial court in allowing the jury to view the property.

*Was defendant's expert witness improperly limited in his testimony?* Defendant's expert witness, Domeny, testified that he used three approaches in determining market value, namely, cost of reproduction, comparable sales in the market, and income or capitalization.

He stated that the "cost approach method" was to estimate the reproduction cost of the improvements, deduct normal depreciation, and add to that the value of the land. He testified in great detail from a three-page typed report, entitled "Reproduction Cost Estimate," as to each item of costs, coming out with a total of $152,378.67.

The court ruled that the cost of reproduction approach was not applicable in the instant case and granted plaintiff's motion to strike the testimony of Domeny relating thereto, admonishing the jury, however, as follows: "You remember that the witness testified that he had used three separate

approaches in arriving at the market value of this property. . . . It is only that portion of the testimony having to do with what he considered when he gave you an example of reproduction cost and then talked about reproduction cost and age and rate of depreciation, and so forth; that alone is stricken. The balance of the testimony is in.'' This ruling was correct.

█ In *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 427-428 [196 P.2d 570, 6 A.L.R.2d 1179], the Supreme Court said: ''In a number of cases it has been held proper to admit evidence of reproduction cost as an aid to determining value, especially when the property is adapted to a particular enterprise and there are ordinarily no willing buyers and hence no market for that type of property [citation]. . . . *The general rule, however, is that the proper measure of damages is not the market value of the land plus the reproduction cost of the improvements, but the market value of the property as improved, in view of all the uses to which it is adaptable and available.* [Citations.]'' (Italics ours.) (See also *City of Los Angeles* v. *Klinker* (1933) 219 Cal. 198, 211 [25 P.2d 826, 90 A.L.R. 148]; 5 Nichols on Eminent Domain (3d ed.) §20.2 (2).)

Defendant apparently does not seriously challenge the foregoing rule but contends that, inasmuch as ''a witness' *reason* for arriving at his conclusion is not evidence [of value],'' the testimony as to the cost of reproduction should have been allowed to stay in for the limited purpose of explaining such reason. (Italics ours.)

This contention is based upon section 1872 of the Code of Civil Procedure, which provides: ''Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel.''

█ However, in *People* v. *La Macchia* (1953) 41 Cal.2d 738, 745 [264 P.2d 15],[1] the Supreme Court stated: ''The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evidence.'' The court quoted with approval from a Massachusetts opinion, as follows (p. 745): '' '[T]here is no right to put in evidence of matters which are incompetent as substantive evidence for the purpose of fortifying the opinion of an ex-

---

[1]Overruled as to another point, i.e., exclusion of evidence of similar sales. (*County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 680 [312 P.2d 680].)

pert witness, even though they are offered under the guise of the reasons for his opinion, and even though they might properly have been admitted on cross-examination to test and diminish the weight to be given to his opinion.' '' (See also: 5 Nichols on Eminent Domain (3d ed.) §18.45 (1).)

■ Defendant also complains that the testimony of her expert concerning the income or capitalization approach was improperly limited to ''the income which the property actually produced, rather than the income which it should have produced when put to the maximum of its highest and best use.'' This is not borne out by the record.

Using what he called a ''gross income multiplier'' of 7.8 and an annual gross income of $10,917, the expert had arrived at an approximate valuation of $85,000. He then testified that rents on the subject property were low as compared with those in the same area; that one of the four storerooms, which had been vacant for several years, should be rented for $150 per month, which would add $1,800 to the annual gross income, and result in a valuation of $99,162,60. However, he gave $95,000 as the fair market value of the property, stating that he did not ''like to force those figures.''

The expert then went on, without objection, to testify that, with proper management, the property could produce an annual gross income of $16,650. This would include a possible revenue of $75 per month for the use of the top of the building as a sign site.

However, the court did place some limitation on the testimony as to the effect of better management. In a discussion between court and counsel, out of the presence of the jury, defendant's counsel urged that an important consideration by a potential buyer would be whether he would be a better manager than the present manager. The court replied: ''And you can't say to one man, 'Well, you are a better manager than the present owner. Therefore, your income is going to be better,' because that is pure speculation.'' The court was correct.

The ''limitation'' complained of by defendant is more theoretical than real. As we have seen, the expert was allowed to testify to potential rentals and to give a valuation based thereon, using the capitalization of income approach and estimating such potential gross income by its highest and best use.

■ In his opening statement, defendant's counsel had stated that the expert would testify that ''it was difficult to

obtain good income on this property with that freeway going to shoot through there for a considerable length of time beforehand.'' This evidence as to ''blight'' is not admissible. (*Atchison T. & S. F. Ry.* v. *Southern Pac. Co.,* 13 Cal.App.2d 505, 517 [57 P.2d 575]; *People* v. *Lucas,* 155 Cal. App.2d 1, 6 [317 P.2d 104].) As stated in *Atchison, supra,* it would be indulging in ''unfathomable speculation'' to permit such testimony.

*Reference to ''Triple R'' Report.* The witness Kerr testified that there were numerous violations of the Housing Code of the City of Oakland on the property. He also testified that on May 23, 1961, a request was made of his department on behalf of the defendant for a ''Triple R'' report. An ordinance of the plaintiff city provides that the owner of property of the type involved herein must furnish a prospective purchaser with such a report prior to the consummation of a sale. The report is required to contain certain information as to the authorized occupancy or use of such property.

Defendant's objection to the report was sustained and the jury was instructed to disregard all reference thereto.

However, Robert F. Atkinson, plaintiff's expert witness on valuation, later testified *without objection* that in the buying and selling of an apartment house in the City of Oakland the ''Triple R'' report would be a factor in the mind of a purchaser as to the highest price he would pay. He explained the purpose of such a report and what it covered.

 ˙ The error complained of by defendant is that plaintiff's counsel, in his argument to the jury, referred to the fact that one of defendant's own appraisers had asked for the ''Triple R'' report. This statement was apparently designed to meet any inference that the preparation of such report had been instigated by the plaintiff for the purpose of running down the value of the property.

The exact language used by plaintiff's counsel is as follows: ''I have not attempted to downgrade Mrs. Partridge's property at all. I have merely attempted to show, through our witnesses, the actual fair market value by realistic standards, not by mathematics purely, not by speculation, but by the realistic standards that are found in the open market, the opinion of highest value in the market.

''Now apropos of the illegalities, there was some confusion, I realize, in the testimony of one of our urban renewal men, but I ask you to consider this, ladies and gentle-

men: the request for the Triple R. Report, the report of illegalities was directed to the Urban Renewal Department, not by our office but by Mrs. Partridge's own appraiser.

"It is the law in the City of Oakland that an owner of property, before a sale can be consummated, is required to secure such a report from the Urban Renewal Department and give it to the purchaser."

Defendant did not make any objection to the foregoing remarks at the time they were made. Nor did she move for a new trial, which would have given the trial court an opportunity to assess any prejudice arising from the assigned misconduct. The point is now raised for the first time on this appeal. We think it is too late. (*Harrison* v. *Harter,* 129 Cal.App. 22, 32 [18 P.2d 436]; *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330, 340 [240 P.2d 282].) As stated in *Aydlott* v. *Key System Transit Co.,* 104 Cal.App. 621, 628 [286 P. 456]: "The remarks in question were not assigned as misconduct at the time they were made, nor was the court requested to instruct the jury to disregard any of them. As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect. It is only the most extreme case where an instruction to the jury, if given, would not remove the effect of improper remarks. [Citations.]"

*Instructions.* Defendant complains of but one. Without the citation of any authority or the stating of any reason other than it "confused" the jury and allowed them to completely disregard all of the other instructions, the defendant contends that the giving of the following instruction was error: "The Court has given you instructions embodying such rules of law as may become necessary to assist you in arriving at a verdict. As to some of these instructions, their application depends upon the light in which you view the evidence.

"The fact that the Court has given you instructions as to particular rules of law must not be taken by you as an indication that such rules are necessarily applicable. Where

there is a conflict of evidence, the question as to whether a particular rule of law is applicable depends frequently and solely upon the conclusion as to what the facts are, and the jury are the sole judges of the facts.''

 Instructions are to be read as a whole, rather than individually and out of context, and they are to be given a reasonable construction from the standpoint of their probable effect upon the jury (*Lund* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 287, 294 [153 P.2d 705] ; *Wells* v. *Lloyd,* 21 Cal.2d 452, 458 [132 P.2d 471].) Also, an appellant must show that any error in the giving of an instruction was prejudicial. (*Taylor* v. *Pacific Container Co.,* 148 Cal.App.2d 505, 513 [306 P.2d 1049].) Here, no such showing has been made.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.